[Crim. No. 791.   Second Appellate District, Division Two.—September 26, 1921.]

THE PEOPLE, Respondent, v. P. S. ZARATE, Appellant.

[1] APPEAL—INSUFFICIENT SPECIFICATION OF POINTS.—On an appeal from a judgment, alleged errors in rulings during the trial and in refusing to give requested instructions will not be considered where the points are merely stated followed by references to the transcript without argument or citation of authority, or where authorities are cited, no statement is made as to what principle or rule they enunciate.

[2] CRIMINAL LAW—CONFESSION—INSTRUCTION.—An instruction that a confession, in criminal law, is a voluntary declaration made by a person who has committed a crime to another person, while fragmentary and incomplete, is without prejudice, where there was a plain and direct statement in the written confession that the defendant committed the crime charged.

[3] ID.—FORGERY — VOLUNTARY CHARACTER OF CONFESSION — INSTRUCTION.—In this prosecution for the crime of forgery, the instruction concerning defendant's confession is held not to have had the effect of leading the jury to believe that the court had passed upon the free and voluntary character of such confession, in view of the instruction when considered in its entirety.

[4] ID.—EVIDENCE—IDENTITY OF PERSON.—In a prosecution for forgery, questions addressed to residents of a very small place, of which the person whose name the defendant was charged to have forged was represented to be a resident, as to whether they knew such a person, were entirely proper.

APPEAL from a judgment of the Superior Court of San Diego County.  E. A. Luce, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Edward J. Kelly for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

WORKS, J.—This is an appeal from a judgment of conviction of the crime of forgery. Joseph L. Thing and Charles E. Thing conducted a mercantile business under the name of Thing Bros., in the little town of Tecate, part of which place is in San Diego County and part in the republic of Mexico. On account of the lack of banking facilities in the village, it was the custom of Thing Bros. to issue their checks on a San Diego bank to the people of the place in exchange for cash, the paper then being used in the transaction of business with the outside world. The checks were always drawn by the brothers themselves, one being accustomed to write them by hand, while the other used a typewriter for the purpose. The typewritten paper was drawn from a red and a black ribbon, each of the colors being used, invariably, on a certain and definite portion of each check. Appellant procured one of these typewritten checks in the sum of five dollars, through a third person, paying that amount for it. Next, through a conductor on the railroad running from Tecate to San Diego, he procured both a black and a red typewriter ribbon from the latter place, and also a pad of blank checks upon the bank on which Thing Bros. were accustomed to draw their paper. Appellant then wrote a letter, purporting to be signed by one E. E. Snyder, to another bank in San Diego, inclosing two checks and asking the bank to make collection of them. The checks were, respectively, for the sums of $1,010 and $992, were drawn on the bank with which Thing Bros. did business, were payable to E. E. Snyder, were signed "Thing Bros., by J. L. Thing," and were typewritten in two colors, in exact accord with the custom followed by Joseph L. Thing, the brother whose practice it was to draw the typewritten paper issued by the firm. The bank was instructed, after collecting the proceeds of the checks, to send $1700 in currency to the alleged Snyder at Tecate by the railway conductor above mentioned. It was stated in the letter that the money was to be used for the purpose of paying Snyder's men. The remaining $302 was directed to

be deposited in the bank to which the letter was addressed, in the name of Snyder. The currency was sent to Tecate, not by the conductor, however, but by registered mail, and was delivered to appellant, who receipted for it in Snyder's name, by himself, as agent. The balance of the proceeds of the two checks, $302 dollars, was placed on deposit in the bank as directed, and $300 of it was later withdrawn on a check bearing the signature of the alleged Snyder, but the money was, as before, delivered to appellant as Snyder's agent. It was shown at the trial that neither of the two checks sent to the San Diego bank was signed by either of the brothers Thing, and appellant made written confession that the signature was appended to each of them by him. No such person as E. E. Snyder appeared at the trial, and several witnesses from Tecate testified that they knew of no such person. Some days after procuring the original check for five dollars from Thing Bros., which paper the prosecution, of course, claims appellant used as an exemplar, he endeavored to sell it to one Blanco for four dollars, but Blanco did not buy it. This check must have been finally destroyed, as it was never presented for payment. The charge against appellant was for forging the check for $1,010.

[1] Appellant makes at least eight points upon rulings during the trial, each of them stated in this manner: "The court erred in overruling defendant's objection," followed by a reference to the transcript. Not only, in each instance, does counsel fail to state the question to which objection is made, or the objection itself, but none of the points is argued and no authority is cited in support of any of them. Such a casual presentation of points, if followed up, would impose upon us a labor which is within the peculiar province of counsel, and which does not come within the range of our duty. We are not called upon to consider points so presented (*Gray* v. *Walker,* 157 Cal. 381, [108 Pac. 278]).

In more than a half dozen instances appellant charges error in the refusal of the trial court to give instructions, contenting himself with a reference to the transcript for the text of the requested instructions, and citing cases in each place without giving us any information as to what principle or rule the cases enunciate. Points so presented will

not be considered. In a case in which counsel referred to instructions in a similar manner and cited sections of the code by number in support of his claim that they should have been given, the supreme court said: "If counsel will not take the time to point out the particular instruction or instructions upon which he predicates error, and the law which he invokes, we will not do so" (*People* v. *Chutnacut*, 141 Cal. 682, [75 Pac. 340]).

There are other questions which are stated in appellant's brief by mere reference to the transcript, without attempt to acquaint us with their nature by anything whatever shown upon the face of the brief; and there are still others which, even though they are more fully stated, are not supported by the slightest argument. Under the authorities already cited, we are bound to consider none of these.

[2] It is contended that the trial court erred in instructing the jury that a "confession, in criminal law, is a voluntary declaration made by a person who has committed a crime, to another one." This definition is, indeed, fragmentary and incomplete, but it does not appear to us that its presentation to the jury could have prejudiced appellant. In his written confession, after acknowledging the authorship of the letter to the San Diego bank with which the two checks were inclosed, appellant says: "I also forged the signature of Thing Brothers by J. L. Thing, to the two checks mentioned in said letter aggregating 2002" With this plain and direct statement before the jury, it made little difference whether any instruction was given upon the meaning of the word "confession," It must have been obvious to them, without definition from the court, that a positive confession of the commission of the crime, not to be misunderstood by an intelligent mind, was before them. Appellant could have suffered no substantial injury from the instruction given.

[3] The next claim made by appellant is that the trial court erred in stating to the jury that the court had passed upon the question of the free and voluntary character of the confession of appellant. In order that this point may be intelligently considered, it is necessarry to set forth the entire instruction to the jury concerning the confession, as it is in that instruction that the alleged erroneous statement occurs. The instruction follows:

"You are further instructed that part of the evidence relied upon in this case by the prosecution is what is termed a confession, or what is claimed by the prosecution to be a confession by the defendant, and a confession, in criminal law, is a voluntary declaration made by a person who has committed a crime, to another one; and the law of this state requires that before the confession may be admitted in evidence and considered by you that it be a free and voluntary confession, that is, that it be not induced by either a promise of reward or by a threat, or by any duress, it must be, in other words, what is stated, a free and voluntary statement on his part before that confession is admitted in evidence in this case and brought to your attention and permitted to examine it; the court has passed upon that question and has ruled that the confession is evidence by reason of the fact that it was free and voluntarily made and that it is legally admissible and legally and properly to be considered by you, therefore, if you after having heard the evidence in the case and believe that there is a conflict of evidence as to whether or not that confession was freely and voluntarily made, you have the right and privilege of passing upon that question of fact yourselves, as to whether or not it was freely and voluntarily made, and to reject the confession from your consideration if you believe that it was not freely or voluntarily made; or, perhaps stating it more correctly, unless you do believe beyond a reasonable doubt that it was freely and voluntarily made."

It is to be observed that in the course of the instruction the court remarked that "the, court has passed upon that question and has ruled that the confession is evidence by reason of the fact that it was free [*sic*] and voluntarily made and that it is legally admissible and legally and properly to be considered by you." It is this statement that appellant assails as objectionable. While it were better that the condemned matter had not been included in the instruction, it does not appear to us that its use operated to the prejudice of appellant, considering it in connection with what followed it. The statement itself, while it did contain the assertion that the court had passed upon the question, was softened by the expressions to the effect that the court "has ruled that the confession is evidence," "that it is *legally* admissible," and that it is "*legally* and *properly* to be con-

sidered'' by the jury. Following these statements, immediately, the jury was told, "*therefore,* if . . . you believe that there is a conflict of evidence as to whether or not that confession was freely and voluntarily made, you have the right and privilege of passing on that *question of fact* yourselves, as to whether or not it was freely and voluntarily made, and to reject the confession from your consideration . . . unless you . . . believe beyond a reasonable doubt that it was freely and voluntarily made.'' In the last analysis, and considering the entire instruction together, it appears to us that it amounts to nothing more than a statement that the court had passed upon the question only for the purpose of determining whether the confession was admissible in evidence, that it had been admitted, and that the members of the jury, as judges of the facts, were finally to pass upon the question whether it was freely and voluntarily made. Thus understood, the instruction was proper, for it is the duty of a trial court to consider, in the first instance, whether a confession was freely and voluntarily made, as a basis for a determination of the question of its admissibility in evidence (*People* v. *Jim Ti,* 32 Cal. 60; *People* v. *Oliveria,* 127 Cal. 376, [59 Pac. 772]).

[4] Several of the witnesses at the trial were asked by the prosecution whether they knew such a person as E. E. Snyder, and in each instance the question was met by an objection, which was overruled. It is contended that these rulings were erroneous. While a forger, naturally, might employ the name of a known person in the commission of the crime of which he is guilty, in the manner in which Snyder's name was used here, there is, perhaps, a greater likelihood that he will employ a fictitious name. At any rate, the fact that one charged with the crime has used a fictitious name in his work would be a circumstance to be considered, in connection with others, in determining his guilt or innocence. The question whether Snyder was known as an actual person was addressed to three residents of Tecate, which the evidence shows was a very small place. Under these circumstances the question was entirely proper.

On account of the great number of errors claimed by appellant to have been committed by the trial court, principally, however, in the very general manner upon which we have passed comment, we have made examination of the

entire cause, including the evidence (Const., art. VI, sec. 4½). From such examination we are abundantly satisfied that if any error was committed by the trial court, which we. are far from deciding, such error has not resulted in a miscarriage of justice.

Judgment affirmed.

. Finlayson, P. J., and Craig, J., concurred.