[Civ. No. 3662.  Second Appellate District, Division Two.—March 1, 1922.]

## SHIRLEY E. MESERVE, Appellant, v. SMITH BROTHERS et al., Respondents.

[1] SALES—CONTRACT FOR PURCHASE OF AUTOMOBILE—OLD CAR AS PART PAYMENT—CREDIT OF "NET BALANCE" ON RESALE—DEDUCTION OF EXPENDITURES FOR REPAIRS.—Under a contract for the purchase of an automobile providing that the old car of the purchaser, which was turned in as part payment to the amount of nineteen hundred dollars, was to be sold for as much more as possible and "net balance" credited to the purchaser, the seller had the right to make expenditures on the old car in order to render it fit for sale or exchange, and such expenditures in repair were expenses incident to its sale to be deducted in allowing credit under the contract.

[2] ID.—RESALE OF OLD CAR—USED CAR OF PURCHASER—PART PAYMENT—AMOUNT OF CREDIT OF ORIGINAL OWNER.—Under such a contract, where the old car was sold for only part cash and the used car of its purchaser taken for the balance, the original owner of the old car was not entitled to credit for more than the actual value of the used car, regardless of the valuation agreed upon between the immediate parties to the resale.

[3] APPEAL—ERRORS DURING TRIAL—RECORD—INSUFFICIENT PRESENTATION.—The appellate court is not called upon to consider alleged errors in respect to rulings on evidence, where counsel merely states in each instance that the court erred and follows the statement with a reference to the transcript, leaving the court to follow up the reference and thus ascertain the nature of question, objection, and ruling.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Albert Lee Stephens, Judge.  Affirmed.

The facts are stated in the opinion of the court.

William A. Sumner for Appellant.

Newby & Palmer for Respondents.

WORKS, J.—Defendants are dealers in automobiles. Plaintiff purchased from them a "new" car, turning in his "old" car in part payment to the amount of $1,900. The contract evidencing the deal was in writing and contained the provision: "Old car to be sold for as much more than $1,900 as possible and net balance to be credited to" plaintiff. Defendants then transferred the old car to a third party for the sum of $1,600 in cash and a used Chevrolet car, which, to quote from appellant's brief, "was taken in by defendants at the agreed figure" of $750. Before making this deal defendants expended the sum of $162.65 in repairs on the old car. As the sum of $1,600, representing the cash received by defendants on the old car, and the sum of $750, the "agreed figure" placed on the Chevrolet, together make the sum of $2,350, plaintiff brought this action against defendants for the difference between $1,900 and $2,350, or $450, basing his claim upon the ground that the old car had been sold under the writing above mentioned for $450 more than the $1,900 specified therein. Defendants made their defense upon the theory that, although the Chevrolet car was taken by them at the agreed price of $750, it was worth but $350. They also contended that their expenditure of $162.65 on the old car was necessary to put it in condition for the market. They insisted, therefore, that the old car had not been sold for more than $1,900 and that plaintiff could not recover. Defendants had judgment that plaintiff take nothing and the latter appeals.

Although the points argued in the briefs are many, they really depend in the main upon the settlement of but two questions: 1. Had respondents the right to make expenditures on the old car in order to render it fit for sale or exchange? 2. Can appellant insist that as between him and respondents the Chevrolet car shall stand as the equivalent of $750?

[1] We take these questions up in their order. It is to be remembered that the contract between the parties pro-

vided that the old car was to be sold for as much more than $1,900 as possible, the "net balance" to be credited to appellant. The expression "net balance" is not difficult to understand. Moreover, it has been defined in terms which fit sufficiently the present case. The phrase was employed in a telegram concerning a sale of stocks, the wire reading, in part, "We will give you net balance to-morrow in Philadelphia." It was said by the court before which the transaction came for consideration, "As applied to the proceeds of the sale of stock, the phrase 'net balance' means, in commercial usage, the balance of the proceeds after deducting the expenses incident to the sale" (*Evans* v. *Waln,* 71 Pa. St. 69.) Taking this just definition for our guide we are to determine whether respondents' expenditures in repair of the old car were expenses incident to its sale. As a preliminary to the settlement of this question it is to be observed that the interests of the parties to be subserved by a sale of the car were identical, at least to the extent that a sale for no less than $1,900 was desirable. The parties must have contracted with that idea in mind. The particular interest of appellant was that the car should sell for more than $1,900 and he must have contracted with that idea in mind. All this in effect means that, if the car was in such condition that without repair it would not sell for $1,900, considering the common interest of the parties, nor for more than that amount, considering the particular interest of appellant, such repairs as would be necessary to make it sell at the highest possible price must have been contemplated by appellant when the term "net balance" was inserted in the contract. Therefore, are the repairs which were actually made upon the car to be considered as "necessary" repairs within the terms of the contract as thus understood? This question must be answered from the evidence, or, rather, from any part of the evidence which operates as a support to the finding of the trial court that the repairs were necessary, for the court did so find. On this subject a witness for respondents was asked, "In your experience as an automobile man, were those repairs necessary in order to sell this Peerless roadster [the old car]?" His answer was, "The car had no worth unless it was in good running shape, so the repairs had to be made upon it to get any amount of money out of it." Upon this evidence we have no hesitation in asserting that the

finding of the trial court is supported, that the repairs were necessary, and that the net balance in favor of appellant which was to result from the sale could be ascertained only after a deduction of the cost of the repairs.

[2] The second question is even easier of solution. Appellant makes no contention that the old car should have been disposed of for cash. He seems entirely satisfied with the fact that it went for $1,600 cash and the Chevrolet car, if he be permitted to insist that as between him and respondents this latter piece of road rolling stock should stand at $750, although, as we have already observed, the assertion of his own brief is to the effect, only, that the Chevrolet was taken in by respondents at the "agreed figure" of $750. This agreed figure it is to be understood, of course, was agreed between respondents and the taker of the old car, at the same time the one who bade adieu to the Chevrolet. What they may have agreed to as the value of the latter car is of no concern to appellant. It is obvious to us that as to him the question is as to the *actual worth* of the Chevrolet. There was ample evidence to support the finding of the trial court that the car was worth but $350. We are convinced, then, that appellant can consider it only as the equivalent of that amount, not of $750.

[3] Appellant asserts that the trial court erred in respect to various rulings admitting and rejecting evidence, but we assume from certain remarks in the brief that all the questions thus attempted to be raised are disposed of by what we have said above. If they are not, however, we need not be concerned about them for the reason that they are not adequately presented. Counsel merely states in each instance that the court erred and follows the statement with a reference to the transcript, leaving us to follow up the reference and thus ascertain the nature of question, objection, and ruling. In a somewhat similar situation we said: "Such a casual presentation of points, if followed up, would impose upon us a labor which is within the peculiar province of counsel, and which does not come within the range of our duty. We are not called upon to consider points so presented" (*People* v. *Zarate,* 54 Cal. App. 372 [201 Pac. 955]).

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.