[Civ. No. 4096.   Second Appellate District, Division Two.—November
27, 1923.]

MICHAEL EDWARD MAGUIRE, Plaintiff and Respond-
ent, v. THOMAS J. CUNNINGHAM, as Adminis-
trator, etc., Defendant and Respondent; ANNA
MAGUIRE VOLD et al., Interveners and Appellants.

[1] JURISDICTION—QUIETING TITLE TO REAL AND PERSONAL PROPERTY—
MOTION TO DISMISS ACTION—GROUNDS.—Where a complaint con-
sists of three counts, the first to quiet title to real property in
another county, the second to quiet title to said real property and
to personal property in the form of cash, and the third for money
had and received to recover such cash, a motion on appeal to
dismiss the action as a whole upon the ground that the trial court
did not have jurisdiction thereof, for the reason that it was not
commenced in the county where such real property is situated,
must be denied, as the ground of such motion does not reach the
third count.

[2] ID.—OBJECTION TO JURISDICTION—TIME.—The right to object to
the jurisdiction of the court is always open, at least in favor of a
defendant.

[3] ID.—APPEAL—MOTION TO DISMISS—RIGHT TO RAISE QUESTION OF
JURISDICTION.—The question of the jurisdiction of the trial court
will be considered as arising upon the appeal from the judgment,
notwithstanding such question was not presented in the briefs on
appeal, but only in the briefs filed by appellants in support of
their subsequent motion on appeal to dismiss the action on the
ground that the trial court did not have jurisdiction.

[4] ID.—RIGHT OF INTERVENER TO OBJECT.—An intervener has the same
right as a defendant to raise the objection of want of jurisdic-
tion, or to object to the sufficiency of the complaint.

[5] ID.—QUIETING TITLE TO REAL PROPERTY—LACK OF JURISDICTION.—
Where a complaint consists of one count only, i. e., to quiet title
to real property, and such complaint is filed in a county other
than that in which the property is situated, such action is a
nullity, and the venue cannot be changed to the county in which
the property lies.

[6] QUIETING TITLE—REAL AND PERSONAL PROPERTY—JOINDER—SEPA-
RATE STATEMENT—PLEADING.—Under section 738 of the Code of
Civil Procedure, as amended in 1921, a claim against the same
parties to quiet title to personal property situated within the
county where the action is commenced and to real property situated
without that county may be included in the same complaint with-
out separate statement.

[7] Id.—Community Character of Property—Evidence—Findings. In this action by a surviving husband against the administrator of the estate of his deceased wife to procure a decree establishing that certain property described in the complaint, consisting of personal property situated within the county where the action was commenced and certain real properties situated without that county, was community property of plaintiff and the deceased, and not the separate property of the latter, the evidence was sufficient to justify the findings of the trial court in favor of plaintiff.

[8] Id.—Action Against Administrator — Filing of Claim not Necessary Prerequisite. — The filing of a claim or demand against the estate of the deceased wife, pursuant to the provision of section 1500 of the Code of Civil Procedure, to the effect that "No holder of any claim against an estate shall maintain any action thereon, unless the claim is first filed with the clerk, or presented to the executor or administrator, except," etc., is not a necessary prerequisite to the maintenance of an action against the administrator of said estate to quiet title to real and personal property claimed to have been community property of plaintiff and the deceased.

[9] Id.—Right of Husband to Testify—Code Restriction not Applicable.—The provision of subdivision 3 of section 1880 of the Code of Civil Procedure that parties to an action cannot be witnesses if the action is "against an executor or administrator upon a claim, or demand against the estate of a deceased person," and if the testimony of such party relates "to any matter of fact occurring before the death of such deceased person," is not applicable in an action by a surviving husband against the administrator of the estate of his deceased wife to quiet title to certain property claimed to have been community property of plaintiff and deceased.

[10] Evidence—Book Entries—Admissibility of Parol Evidence.— While book entries, if sufficiently vouched for, are receivable as evidence of equal value, upon the score of admissibility, with the testimony of the real witnesses to the occurrences recorded in the entries, they are never the best evidence in the sense that they are primary to the testimony of men who have participated in events of which a record has also been made in the books, nor are they primary to the testimony of third parties who have witnessed the occurrence of the events.

[11] Quieting Title—Personal Property—Retroactive Effect of Code Amendment.—The amendment to section 738 of the Code

9. Effect of death of one spouse on competency of other as witness, note, Ann. Cas. 1917D, 216.

10. Admissibility as evidence of books of account in contradiction or corroboration of witnesses, note, 52 L. R. A. 717.

of Civil Procedure, giving the right to maintain an action to quiet title to personal property, as well as real property, has a retroactive effect to the extent that actions pending when it became operative are brought within its purview.

[12] ID.—ACTION INVOLVING MONEY—JURISDICTION.—In so far as the action involved a sum of three thousand dollars, which was identified in the complaint as a specific fund on deposit in a certain bank within the county in the maiden name of the deceased, it was an action *in personam* of a transitory character which could be lawfully commenced in the superior court of that county, regardless of the 1921 amendment to section 738 of the Code of Civil Procedure. (Opinion of supreme court on denial of hearing.)

[13] ID.—DEFECTIVE PLEADING—JURISDICTION.—The mere fact that the complaint in such action was in some respects defective would not of itself deprive the court of jurisdiction if it stated, though imperfectly, a cause of action, the subject matter of which was within the jurisdiction of the court, and if the defects therein were capable of being cured by amendment. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Meserve & Meserve for Appellants.

Ford & Bodkin for Plaintiff and Respondent Michael Edward Maguire.

No appearance for Defendant and Respondent Administrator.

WORKS, J.—This action was commenced in the county of Los Angeles. The complaint consists of three counts. The first of these is in the ordinary form of a complaint to quiet title, but the real property involved lies in the county of Alameda and in the city and county of San Francisco. The second count partakes of a hybrid character, being in form a complaint to quiet title to the real property described in the first count and to personal property consisting of $3,000 in cash. The third count is for the recovery of money had and received in the sum of $3,000. Plaintiff had judgment and the interveners appeal.

[1]  Before disposition is made of the appeal a preliminary matter engages our attention.  Appellants move the court "to dismiss the . . . action, and for an order . . . ordering and directing" the trial court "to dismiss said action, and for an order and decree therein that" the trial court, "and, therefore the above-entitled court, never had jurisdiction of said action, or right or power to try the same."  The motion is made "on the ground that said action involves the title to real property, all of which is situated, lying and being in the county of Alameda, . . . and that said action was commenced in the superior court in and for the county of Los Angeles, . . . and not commenced in the superior court in and for the county of·Alameda, . . . "

Whatever may be said of the first and second counts of the complaint, it is at once evident that the grounds upon which the motion is based do not reach the third count. The cause of action there pleaded, plainly, does not involve the title to real property, situate in the county of Alameda, or elsewhere.  Accordingly, the motion, addressed as it is to the action in its entirety, falls to the ground.  As we we cannot under the motion dismiss the cause of action pleaded in the third count, we cannot dismiss the action as a whole.

There may be some question whether the motion made by appellant is proper practice.  We are, therefore, not to be understood as passing upon that point.  It is also to be understood that we are not determining several questions which appear to present themselves on the face of the complaint: 1. Does the second count set forth two causes of action without separate statement?  2. If it does not, is the first count properly joined with the other two?  3. Is the third count properly joined with the other two?  These questions will receive mention later.

The motion made by appellants was an afterthought, that is, the notice of the motion was served and filed long after the filing of both appellants' opening brief and the brief of respondent Michael Edward Maguire.  Respondent Cunningham, administrator, has filed no brief.  [2]  The point made in support of the motion is under the statute available on appeal, for the right to object to the jurisdiction of the court is always open (Code Civ. Proc., sec. 434), at least, in favor of a defendant—and we state this qualifica-

tion, for reasons which will hereafter appear, because the presentation of the point under the motion here is made by appealing interveners. **[3]** We are now confronted with the question whether we shall consider the question of jurisdiction as arising upon the appeal, notwithstanding the fact that it is not presented in the briefs on appeal, but only in the briefs under the motion. We have concluded that it is our duty to do so. In the first place, the point is one which arises under the constitution of the state (art. VI, sec. 5), the provision also finding its echo in the Code of Civil Procedure (sec. 78). It is the settled policy of the state that actions to quiet title, and certain others which affect real property, shall be commenced in the county in which the real property is situated. Moreover, the question is one which cannot be waived (*Fritts* v. *Camp,* 94 Cal. 393 [29 Pac. 867]). Further, by the presentation of the motion appellants have indicated a desire to avail themselves of this state of the law, and it appears to us that we should allow the point the same effect upon the appeal, provided, of course, that it possesses merit, that it would have had under the motion if the latter had been addressed to the separate counts of the complaint, and not to the pleading as a whole. Again, the point has been argued under the motion and it is therefore fully before us, in form at least. For these reasons we shall proceed to consider it upon the appeal, after we have made disposition of a point made by the appearing respondent, to whom we shall hereafter refer as if he were the sole respondent.

**[4]** Respondent contends that appellants, being interveners, may not raise the question of jurisdiction, because of the well-established rule that an intervener must take the action into which he projects himself as he finds it. This principle has found expression in many cases, but none of them supports the contention made by respondent here. In fact, the statement of the rule, in terms, that is, that an intervener must take the action "as he finds it," would seem to exclude the contention of respondent. Objections to the jurisdiction and the objection that a complaint does not state facts sufficient to constitute a cause of action are always open to the defendants (Code Civ. Proc., sec. 434), and we have already seen that the objection that there is no jurisdiction of the subject matter cannot be waived (*Fritts* v.

*Camp, supra*). So the interveners "found" this action when they were permitted to intervene. As the original defendants could have objected to the jurisdiction as well after the intervention as before, it seems that the same right must inhére in the interveners. From an examination of the authorities on the subject we are satisfied that the rule for which respondent contends is correctly stated in a note to *Walker* v. *Sanders,* 123 Am. St. Rep. 276, 292, thus: "It is sometimes said that an intervener must take the case as he finds it, and by this is generally meant that he cannot avail himself of or urge irregularities in the proceeding which the original parties have expressly or impliedly waived, nor of defenses which are personal to them." Later on in this same note are one or two general statements which seem to uphold the contention of respondent, it is true; but an examination of the cases cited in support of them will show that the editor in making them did not have in mind such a question as is presented here, that is, whether the trial court had jurisdiction of the subject matter. It certainly cannot be the law that an intervener cannot object that the complaint in the action in which he intervenes fails to state a cause of action. The contrary has been directly decided (*Hanchett* v. *Gray,* 7 Tex. 549). We are convinced that the right to object to the jurisdiction must be placed in the same category.

[5] It cannot be questioned that appellants' objection to the jurisdiction, as applied to the first count of the complaint, taking it alone, is good; and we say "taking it alone" for the reason that we shall later have something to say of the pleading in its entirety as made up of three counts. It will be remembered that the first count was presented to the superior court in and for the county of Los Angeles for the purpose of quieting title to real property in the county of Alameda and in the city and county of San Francisco. Under both constitution (art. VI, sec. 5) and code (Code Civ. Proc., sec. 78) an action to quiet title to the Alameda property could have been *commenced* only in that county, and a similar action involving the San Francisco property could have been *commenced* only in that city and county. The presentation of the first count of the complaint to the Los Angeles superior court, remembering still that we are considering it alone, was an idle act, as that court had

no jurisdiction to receive it, nor to try the issues tendered by it after receiving it (*Urton* v. *Woolsey*, 87 Cal. 38 [25 Pac. 154]; *State* v. *Royal Consol. Min. Co.*, 187 Cal. 343 [202 Pac. 133]). In fact, the filing of such an action in a county other than that in which is situated the real property involved is so completely a nullity that the venue cannot be changed to the county in which the property lies, for no court can have jurisdiction of such an action unless it was *commenced* in the county where the land is situated (*Urton* v. *Woolsey, supra*. See, also, *Fritts* v. *Camp, supra; Duffy* v. *Duffy*, 104 Cal. 602 [38 Pac. 433]). The trial court had no jurisdiction over the subject matter of the first count of the complaint, standing alone.

[6] We meet a greater difficulty when we come to consider the second count, which has for its purpose the quieting of title to the Alameda and San Francisco parcels of real property and also to personal property consisting of $3,000 in cash. Does this count state but a single cause of action, or does it in its essence include two causes of action? This question is one of great moment, for it is settled that an action "must be wholly local in its nature to require it to be brought in the county" wherein is situated the property which is the subject matter of the action (*Weyer* v. *Weyer*, 40 Cal. App. 765 [182 Pac. 776]. See, also, *State* v. *Royal Consol. Min. Co., supra*). The right to maintain an action to quiet title to personal property is of recent origin in this state, having been created in 1921 by an amendment to Code of Civil Procedure, section 738 (Stats. 1921, p. 542), and whether a claim to quiet title to both real property and personal property may be included in the same complaint without separate statement has never been determined here, nor in fact, so far as we can discover, elsewhere. It is the rule in this state, however, as to actions to quiet title to real property, that but one cause of action is presented where a complaint seeks to quiet title to many parcels of land, even if they be noncontiguous, provided only that the conflicting claims to all the parcels be between the same parties (*Pennie* v. *Hildreth*, 81 Cal. 127 [22 Pac. 398]), and the same rule seems also to prevail in Colorado (*Mitchell* v. *Knott*, 43 Colo. 135 [95 Pac. 335]). Is there not in these cases a condition which is analogous to the subject of our present inquiry? It is the same section of the Code of Civil Pro-

cedure, section 738, that confers the right to maintain actions to quiet title to both real and personal property. Before the amendment of 1921, the opening language of the section was, "An action may be brought by any person against another who claims an estate or interest in real property, adverse to him," etc. The amendment consists in the insertion of the words "or personal" between the words "real" and "property." If under this provision a conflict may be waged, under the same complaint, between those who have opposing claims to many parcels of real property, no matter how different the chain of title of each claimant to each parcel may be—and nothing on this latter head is shown in the ordinary complaint to quiet title—we can see no good reason why a similar contest may not be carried on, under the same complaint, between parties who hold adverse claims to a city lot and to a piano. It has been said in a case in which the right to maintain an action to remove a cloud on the title to personal property was in question: "Any distinction between real estate and personal property in this respect must be purely artificial, and tend to hinder the practical administration of justice." (*Earle* v. *Maxwell*, 86 S. C. 1 [138 Am. St. Rep. 1012, 67 S. E. 962].) The court then upheld the right to maintain the action, independent of statute. That right did not exist in this state until section 738 of the Code of Civil Procedure was amended in 1921, but by that amendment the legislature yielded recognition to the fact that in respect to the right to maintain actions to quiet title the distinction between real property and personal property is artificial. At any rate, if it did not recognize that artificially, the legislature by the amendment wiped out any distinction which had theretofore existed in that respect between the two kinds of property. Under section 738, property is property, whether it be realty or personalty, and the logic of *Pennie* v. *Hildreth, supra,* compels us to hold that in the second count of the complaint now before us there was properly included respondent's right to quiet title to both the real property and the personal property mentioned therein. Therefore, as the cause of action stated in that count was not wholly local, the trial court had jurisdiction of the entire subject matter of it.

We find the complaint, then, in this condition, disregarding for the moment any possible question of misjoinder of

causes of action and considering each count as if it stood alone: The trial court had no jurisdiction of the subject matter of the first count, while it had jurisdiction of the subject matter of both the second and third. We need not consider the question of joinder as between the first and second counts, for the reason that the latter included the entire subject matter of the former. Touching the question of joinder as between the second and third counts—granting for the sake of argument, which we do not decide, that there is such a question—no demurrer on that ground was ever interposed. There being no question of jurisdiction involved in the point, it was waived by failure to demur (Code Civ. Proc., sec. 434). It therefore appears, to sum up the situation, that the trial court had jurisdiction to quiet title to real property described in the second count, to quiet title to personal property in the form of $3,000 in cash, and to determine whether respondent was entitled to judgment for money had and received in the sum of $3,000. It is to be noted that throughout the foregoing discussion we have assumed, without deciding, that cash is personal property within the meaning of section 738 of the Code of Civil Procedure. This we have done for two reasons: First, the point that cash is not such personal property is not made in the briefs on appeal; second, those briefs assure us that the $3,000 mentioned in the second and third counts is one and the same sum of money. This latter reason is controlling because evidence entitling respondent to judgment quieting title to the money would also entitle him to judgment for money had and received, and the trial court made its findings of fact, conclusions of law, and judgment in favor of respondent, as to the $3,000, upon each of the two theories.

[7] We now take up the questions presented by the briefs upon the appeal. The case was one in which a surviving husband sued the administrator of the estate of his deceased wife for the purpose of procuring decree that the property mentioned in the three counts of the complaint was the community property of the spouses before the death of the wife, and not her separate estate, as claimed by the administrator. The interveners were nieces and nephews of the decedent, the Maguires never having had children of their own. The interest of the decedent in a part of the real property described in the complaint, laying aside for the moment the

question as to the nature and character of the funds by means of which it was acquired, arose because of the fact that her husband has made to her conveyances of that part of the property by way of deeds of gift. The record title as to this property stood in the wife at her death under these deeds of gift. One of the contentions of appellants is that the evidence was insufficient to overcome the presumption, arising from the deeds of gift to the wife, that the property conveyed thereby was her separate estate. The point really is, in effect, that the evidence was insufficient to support a finding of the trial court that the property mentioned was community property, for under the issues framed upon the complaint the presumption was merely a part of the evidence in the case tending to show that it was not community property (*Fowler* v. *Enriquez,* 56 Cal. App. 107 [204 Pac. 854]). In order to determine whether the court's finding in this regard is supported by the evidence it will be necessary for us to recapitulate a part of the testimony concerning the property covered by the husband's deeds of gift to the wife. In doing so we shall refer to it by parcel numbers, as far as may be, in accord with the designation employed in respondent's brief, although it will be observed that testimony quoted as to specific parcels will in part often refer to the entire property. To avoid more than a mere statement of the testimony we shall resort frequently to the use of italics. Respondent himself testified as to parcel I: "At the time that that property was bought . . . I was interested in playing the races in Oakland. I had this amount of money . . . and for fear I would spend the money at the race-track, I bought the property. . . . I thought it was better to buy the property than to take a chance to spend it on the races, . . . and I thought it would be a little nest egg . . . for my wife, *in case anything was to happen to me.* That was the whole reason I gave it to her *while she was living,* but I never intended— and everything we ever had, . . . *it was always between us;* if she had a thousand dollars and I says, 'Give me nine hundred and ninety,' she would give me nine hundred and ninety; I would give the same thing to her. . . . " Respondent testified concerning parcel II: "As I deeded the other property to her prior to that time—*to protect myself*—to protect myself and to give the property to Mrs. Maguire for

fear that at any time—my name was good in Oakland, sir,—I could bet on the races at $5,000, if I wanted to, without having to put up any cash, . . . but for fear I would bet and lose *our* property, I gave it to the wife; I made the deed to her in order *to protect myself.* That was the whole, sole reason for it all." Respondent had the following to say as to parcel III: "*I wanted to secure my wife.* I was an extravagant man, and in case anything happened to me in my extravagance, I wanted to have her secure *while she lived,* that everything I had belonged to her. . . . Q. That was the only reason you put it in her name? A. The only reason in the world I put it in her name; she never asked me to put it in her name, but *I wanted to secure her.*" The property can be treated no further as to specific parcels, the remainder of the testimony being either general as to all three parcels, or relating to some one piece or other which we are unable to identify from the briefs as any particular one of the designated parcels. It is to be observed, however, as an aid to an understanding of the testimony, that the three parcels constitute the whole of the Alameda County property, all of which lies in Oakland. The whole of the San Francisco property was held by the husband and wife, in her lifetime, under deeds running to them both as tenants in common. To proceed with the testimony: Respondent testified that one of the pieces of Oakland property had buildings on it when it was purchased, that certain improvements on the buildings were paid for by him in cash, that whenever any repairs had to be made tenants came to him about them, that he hired carpenters, plumbers, painters, or paperhangers whenever anything was to be done and paid them in cash which he either took from his pocket or drew from the bank, that he paid taxes on the property with cash which was "Michael and Bridget Maguire's. It was my cash at the time," that later the taxes were taken care of by an agent (whose testimony will be mentioned later), and that respondent attended to the insurance on the buildings. Respondent also testified: "Q. Was there ever any conversation between yourself and your wife as to what would become of this property in case she should outlive you? . . . A. Well, she said—she would always say, 'If I die first, the property goes to you, and if you die first the property goes to me.' . . . She said *being as it is community property,*

then the property goes to the one that is living. That is what she always said." Respondent further testified that during all the time that he and his life lived in Oakland he collected all rents on the rented property there, and that at other times the rents were collected by the agent already mentioned. This agent, one George D. Troy, of Oakland, testified that Mr. and Mrs. Maguire removed from Oakland to Los Angeles in the latter part of 1918. The record shows that Mrs. Maguire died in the latter place on June 15, 1920. Mr. Troy further testified that he collected the rents on the Oakland rented property from the time that the husband and wife removed to Los Angeles until the trial of the present action, in July, 1921, that when he collected rents during the entire time, about three years, he mailed to respondent drafts for amounts collected, together with statements showing collections, that on an occasion in March, 1919, when Mrs. Maguire was in Troy's office while on a visit to Oakland he showed her one of these statements which he had just made out, that then, to quote him, "I told her I had a certain amount of money here and didn't care to keep it and I would give it to her, and gave her a copy of the statement." He also read the statement to her and she made no objection to its form. This paper was introduced in evidence at the trial. It was headed "Rents Collected to Date for M. E. Maguire." Then followed eight items of rent collected, with a total of $380. Next came the heading, "Money Paid Out on Account of M. E. Maguire," followed by nine items of expenditure, totaling $160. A balance of $219.90 was then struck and the statement closed. Mr. Troy also testified that Mrs. Maguire once said to him, after she had received the deeds of gift from respondent, that the property was earned by Michael and it was only right that he should have it should anything happen to her, and that she talked to him, Troy, about making deeds of gift back to respondent before she should die.

The above is a goodly portion of the evidence pointed to by respondent as bearing upon the finding that the property in question was the community property of the spouses, despite the fact that deeds of gift had been made by the husband to the wife. We have found it unnecessary further to refer to or quote from the evidence. No matter what the opposing showing may have been, in addition to the pre-

sumption arising from the deeds of gift, we are satisfied that the finding receives a substantial support from the evidence to which we have adverted.

[8] Appellants contend that the filing of a claim or demand against the estate of his wife, pursuant to the terms of Code of Civil Procedure, section 1500, to the effect that ''No holder of any claim against an estate shall maintain any action thereon, unless the claim is first filed with the clerk, or presented to the executor or administrator, except,'' etc., was a necessary prerequisite to the maintenance of this action by respondent. As no such claim was filed, they ask for a reversal on that ground. [9] Appellants also insist that the trial court erred in overruling objections made to the competency of respondent as a witness under the language of Code of Civil Procedure, section 1880, subdivision 3, providing that parties to an action cannot be witnesses if the action is ''against an executor or administrator upon a claim or demand against the estate of a deceased person,'' and if the testimony of such party relates ''to any matter of fact occurring before the death of such deceased person.'' These two points may be treated together, as they are both concluded by *Bollinger* v. *Wright*, 143 Cal. 292 [76 Pac. 1108]. The legal question in that case was identical with the last of the two which we have just stated, that is, the one arising under Code of Civil Procedure, section 1880, and the case was in principle like the present one. The court said: ''We are of the opinion that the witness was competent and the evidence properly admitted. The controversy is not concerning a claim or demand against the estate of deceased within the meaning of the section. It is concerning the property of plaintiff and to quiet a claim or demand or title asserted by the estate of such property. The question to be determined is as to whether or not the interest held by deceased under the deed is the property of the estate or the property of plaintiff. If it is not the property of the estate, then the action does not involve a claim or demand against the estate. To hold that the claim or demand in controversy here was a part of the estate, and thus render the witness incompetent, would be to determine in advance the very question at issue.'' The point in the case cited, it is true, relates specifically to the question presented here under section 1880, only, but the reason of the

opinion is directed as clearly at the point raised under section 1500. This is shown by the sentence, ''If it [the property involved] is not the property of the estate, then the action does not involve a claim or demand against the estate.'' We are aware that the question of the applicability of section 1500 has often been held to turn on the question whether a money judgment was sought to be obtained in the action in which the application was attempted to be made. This fact would seem to lend some plausibility to a contention that the section applies to so much of the present action as relates to the sum of $3,000 in cash. It is to be remembered, however, that the action, considering now the second count of the complaint, is to *quiet title* to the sum named, *as personal property.* Under all the authorities, and especially under *Bollinger* v. *Wright, supra,* the section cannot apply to actions to quiet title to real property. With equal reason it cannot apply to an action to quiet title to personal property in the shape of a herd of cattle. It seems to follow clearly, as well, that it cannot apply to an action to quiet title to personal property in the form of cash. The reasoning of *Bollinger* v. *Wright* seems to fit all three classes of cases, or, rather, to show that there are not three classes, but only one. No claim need have been filed prior to the commencement of the action. Respondent was a competent witness to all the matters concerning which he testified.

[10] Respondent testified to deposits and withdrawals of various amounts from a bank. This testimony was received over the objection that the books of the bank were the best evidence on the subject and the appellants insist here that the objection was good. Entries in books of account are never the best evidence in the sense that they are primary to the testimony of men who have participated in events of which a record has also been made in the books, nor are they primary to the testimony of third parties who have witnessed the occurrence of the events. In truth, upon the basic principles of evidence it is the testimony of the actors in any occurrence, or of those who see their acts or hear their words, which is primary to any record kept in books. It has long been the law, however, that book entries, if sufficiently vouched for, are receivable as evidence of equal value, upon the score of admissibility, with the testimony of the real witnesses to the occurrences recorded in the entries. For a

statement of the theory upon which books of account are received as evidence, generally, see 22 C. J. 861–864. See, also, *Landis* v. *Turner,* 14 Cal. 573; *Severance* v. *Lombardo,* 17 Cal. 57; *White* v. *Whitney,* 82 Cal. 163 [22 Pac. 1138]. The objection was properly overruled.

Many points attempted to be made by appellants are so casually mentioned that we are unable to ascertain from the brief what they are. To illustrate the method of presentation of these points, we quote a portion of appellant's brief, which covers but a part of them: " 'Error No. 2' speaks for itself. It certainly was incompetent for Maguire, and calling for his conclusion, to testify as to what his wife owned when they were married, or at any other time. The same point is presented in 'Error No. 3' (folio 183), 'Error No. 4' (folio 186), 'Error No. 5' (folio 187), 'Error No. 5A' (folios 198 and 199) all speak for themselves: Ruling 8 (folios 201 and 203) speaks for itself. This line of evidence, as this court can readily see, was very dangerous: Ruling 9 and 16 likewise speak for themselves." The reports of the decisions of both the supreme and appellate courts of the state are full of cases in which there has been a refusal to consider points no better identified than are those referred to in the above quotation. This court had the following to say in a similar situation: "Appellants make at least eight points upon rulings during the trial, each of them stated in this manner, 'The court erred in overruling defendant's objection,' followed by a reference to the transcript. Not only, in each instance, does counsel fail to state the question to which objection is made, or the objection itself, but none of the points is argued and no authority is cited in support of any of them. Such a casual presentation of points, if followed up, would impose upon us a labor which is within the peculiar province of counsel, and which does not come within the range of our duty. We are not called upon to consider points so presented (*Gray* v. *Walker,* 157 Cal. 381 [108 Pac. 278])." (*People* v. *Zarate,* 54 Cal. App. 372 [201 Pac. 955].)

It is true that in two or three instances appellants' meager statement of points is aided to some extent by comments in respondent's brief which serve in some measure to identify the points made. From what we are able to gather as to those two or three points, however, from both briefs,

we are unable to perceive that they merit a particular discussion.

The foregoing is the text of an opinion rendered by us on a former hearing of the cause, with the exception of the judgment pronounced, and it is now adopted as a part of our opinion upon the present hearing.

Within the proper time after the filing of the former opinion appellants made application for a rehearing of the cause upon various grounds. [11] A rehearing was granted for the reason, solely, that in disposing of the appeal we had not paid regard to the fact that section 738 of the Code of Civil Procedure, as amended in 1921, did not take effect until after the action was commenced. What bearing that situation has upon the cause must now be considered.

The complaint was filed December 7, 1920. Section 738, as amended, became effective on or about July 29, 1921 (Stats. 1921, p. 542). The findings and judgment in the action were filed August 24, 1921, and the judgment was entered August 27. In a brief presented since the rehearing was granted respondent contends that the amendment to section 738, authorizing actions to quiet title to personal property, is remedial in character and that it therefore applies to the present action, pending, as it was, at the time the amendment took effect. That the amendment is purely remedial does not admit of doubt, as it afforded merely a new means of enforcing an existent right. (See 36 Cyc. 1173; *Denning* v. *State,* 123 Cal. 316 [55 Pac. 1000].) It seems also reasonably clear that the amendment applies to the present cause. That such an enactment will support an action upon a claim or demand existing at the time it takes effect, but upon which no suit has theretofore been commenced, is well settled in this state (*Gilman* v. *County of Contra Costa,* 6 Cal. 676; *Chapman* v. *State,* 104 Cal. 690 [43 Am. St. Rep. 158, 38 Pac. 457]; *Buck* v. *Canty,* 162 Cal. 226 [121 Pac. 924]), and, upon principle, it is difficult to perceive how such a proposition could be questioned. However, this proposition, simple as it appears to be, was announced by the supreme court, in the opinion in the case first cited, upon a contention which gives the decision a bearing upon the exact question now present—that is, does an enactment like the amendment to section 738 apply to pending actions? The appellant in *Gilman* v. *County of*

*Contra Costa* argued, "though it may be contended that the Act of 1854 is a remedial statute, and that remedial statutes may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy, still the act in question, if construed to give the plaintiff the right to maintain an action against the county upon a demand which accrued entirely before its passage, is open to the objection that it does impair the vested right enjoyed by the county in its sovereign nature, of exemption from actions, and of its power to postpone payment or to refuse to pay at all." This argument was a most cogent one, the state of the law prior to the enactment then in question and subsequent to the accrual of the claim upon which the action was commenced apparently having been that, while the claimant might have presented his demand to the board of supervisors, and in that sense had a "remedy," he must have been satisfied with a rejection of the demand and had no remedy in the courts. In response to the argument of appellant the court pronounced an opinion which is, in full, "The Act prescribing the manner of commencing and maintaining suits by or against counties, passed May, 1854, applies as well to claims existing before its passage, as those which arose afterwards." A similar condition of affairs is presented by *Chapman* v. *State, supra.* The action was commenced to recover damages for breach of contract. The court said in its opinion: "At that time," that is, at the date of the breach, "the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the same; but the right to sue the state has since been given by the act of February 28, 1893, and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before. The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior contracts, in conflict with any provision of the constitution. 'The fact that the state is not subject to an action in behalf of a citizen does not establish that he has no claim

against the state, or that no liability exists from the state to him. It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. What is made out by this objection is not that there is no liability and no claim, but that there is no remedy.' (*Coster* v. *Mayor of Albany,* 43 N. Y. 407.)'' These cases, while not directly touching the question before us, are surely not without value in solving it. There appears to be no difference, in principle, between them and the present case. At any rate, they show how far the supreme court has gone in construing remedial statutes to be retroactive where the dictates of natural justice impel such a construction and where the constitutional guaranties concerning vested rights are not infringed by it.

When we resort to other jurisdictions we find no lack of authority upon the exact question now before us. It has been held in a number of cases that statutes affecting procedure or allowing a new remedy for the enforcement of existing rights are justly and properly applicable to actions pending when such statutes become effective (*Lew* v. *Bray,* 81 Conn. 213 [70 Atl. 628]; *Cahill* v. *Wissner,* 183 App. Div. 659 [170 N. Y. Supp. 1000]; *City of Chicago* v. *Industrial Com.,* 292 Ill. 409 [127 N. E. 46]; also, see 36 Cyc. 1215); and an early case in this state is to the same purport, although the point is not discussed in the opinion (*Dent* v. *Holbrook,* 54 Cal. 145; see, also, *Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90]). We must conclude that justice requires that the amendment to section 738 of the Code of Civil Procedure be construed to have a retroactive effect to the extent that actions pending when it became operative are brought within its purview. This conclusion gives to the section the force which we ascribed to it in our original opinion in this cause.

The motion to dismiss and the motion for a direction to the trial court to dismiss are denied. Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 25, 1924, and the following opinion then rendered thereon:

THE COURT.—The application for transfer and decision by this court after judgment by the district court of appeal is denied. We do not, however, approve that portion of the opinion of the district court of appeal which seems to hold that the amendment of 1921 to section 738 of the Code of Civil Procedure operated retrospectively to confer jurisdiction upon the superior court of Los Angeles County to entertain and dispose of this action, assuming said court to have had no such jurisdiction at the time of the commencement of the action and at the time of the trial thereof. As to this question we express no opinion, as we do not deem its determination necessary to a disposition of this appeal. Under the facts alleged herein, we are satisfied that said superior court had jurisdiction of this action from the time of its commencement, wholly regardless of said amendment.

[12] In so far as this action involved the sum of $3,000, which was identified in the complaint as a specific fund on deposit in a certain bank in the maiden name of the deceased, it was an action *in personam* of a transitory character which could be lawfully commenced in the superior court of Los Angeles County. This is true whether it be regarded in this aspect as a suit to impress and enforce a trust (*Roach* v. *Caraffa,* 85 Cal. 436 [25 Pac. 22]), or as an action to recover the possession of personal property (*Hillyer* v. *Eggers,* 32 Cal. App. 764 [164 Pac. 27]; Code. Civ. Proc., sec. 1582). [13] The mere fact, if it be a fact, that the complaint was in some respects defective, would not of itself deprive the court of jurisdiction, if it stated, though imperfectly, a cause of action, the subject matter of which was within the jurisdiction of the court, and if the defects therein were capable of being cured by amendment.