2002 OK CIV APP 91

**STATE of Oklahoma, Plaintiff/Appellee,**

v.

**Danny Ray PYLES, Defendant,**

and

**Eddie Ray Inman d/b/a Inman Bonding Company, and Roberta Dampf d/b/a Affordable Bail Bonds, Sureties/Appellants.**

No. 95,749.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 3, 2002.

**474**

Tim Harris, District Attorney, Fred J. Morgan, Assistant District Attorney, Tulsa, OK, for Appellee.

William D. Lunn, Tulsa, OK, for Appellants.

Opinion by JOHN F. REIF, Chief Judge.

¶1 Bail bond sureties Eddie Ray Inman and Roberta Dampf appeal the trial court's refusal to vacate the forfeiture of their respective bail bonds for criminal defendant, Danny Ray Pyles. Sureties Inman and Dampf acknowledge the bonds were properly forfeited upon Mr. Pyles' failure to make a scheduled court appearance. They also concede that they have been unable to return Mr. Pyles to custody after the forfeiture. Sureties nonetheless assert that the forfeitures should be vacated, because law enforce- ment agents for the State of Oklahoma in- creased the sureties' risk while Mr. Pyles was free on their bonds.

¶2 Sureties contend that their risk was increased when two Sapulpa police officers arrested Mr. Pyles in Creek County for seri- ous drug offenses, and then released him based on his promise to cooperate in future drug investigations. Sureties note that the Sapulpa officers were informed by Mr. Pyles that he was free on bond for drug charges in Tulsa County·at the time they released him. Sureties also stress that these officers ac- knowledged that there was a risk that Mr. Pyles would not honor his promise to cooper- ate, as well as a risk that Mr. Pyles would flee to avoid the consequences of all his criminal activity. Sureties believe that the State of Oklahoma, as creditor of the bonds, should be bound by the actions of these officers who were acting for the State to enforce state drug laws. Sureties basically ask the courts to impute to the State the actions and awareness of these officers in releasing Mr. Pyles. As noted, the trial court rejected the sureties' position.

¶3 The sureties and the District Attorney of Tulsa County both argue that the resolu- tion of this controversy can be found in *State v. Vaughn*, 2000 OK 63, 11 P.3d 211. We note that the *Vaughn* case indicates that a trial court's decision to deny a motion to vacate a bond forfeiture is reviewed for abuse of discretion. However, the *Vaughn* case also indicates that when there is no dispute about the facts, "the question of whether an alteration [in a sureties' risk] is material becomes one of law." *Id.* at ¶13, 11 P.3d at 215. In such cases, an appellate court conducts a *de novo* review; that is, "a plenary, independent, and non-deferential re- examination of the lower court's legal ruling." *Id.* (citation omitted).

¶4 Review of the *Vaughn* case reveals principles that support the respective posi- tions taken by the sureties and the District Attorney of Tulsa County. On the one hand, *Vaughn* states: "If the State, without notice to or without the consent of the bondsman, *alters the terms of the bond agreement in a manner that materially increases the bonds- man's risk,* the alteration operates as a dis-

charge of the bondsman's obligation." *Id.* at ¶ 11, 11 P.3d at 214 (footnote omitted). *Vaughn* further provides that "[a]n alteration is material when it changes the nature of the contract by placing the bondsman in a substantially different position than he or she occupied before the change was made." *Id.* at ¶ 12, 11 P.3d at 215 (citation omitted). In contrast, *Vaughn* also provides that "[a] bondsman assumes the risk of the prosecutorial strategy choices that would lead to increasing the number of charges [and] more charges in the same class as the original charges ... is not a material [change] but ... within the ambit of the risk assumed by the bondsman from the beginning." *Id.* at ¶ 14, 11 P.3d at 215.

 ¶ 5 In applying the principles of the *Vaughn* case to the instant case, we note that the *Vaughn* case involved the situation where the State was "increasing the number of charges for the same act or occurrence that is the subject of the initial appearance bond." *Id.* The instant case involves the situation where a defendant incurred additional charges that did *not* arise from the same act or occurrence that was the subject of the initial appearance bond. The defendant herein committed additional crimes while free on the initial appearance bond. Accordingly, this court must determine the legal effect of such action by the defendant on the bonds that provided the defendant's release.

 ¶ 6 We begin by noting, "[a] bail bond agreement is a contract of surety subject to rules of construction generally applicable to contracts." *Id.* at ¶ 10, 11 P.3d at 214 (quoting *People v. Tyler,* 797 P.2d 22 (Colo.1990) (*en banc* )). *See also* 15 O.S.2001 § 374. In addition to giving effect to the express terms and conditions of the contract, all contracts should be interpreted and enforced to protect the reasonable expectations of the parties.

¶ 7 Statutory law directs that "[a]ll things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom." 15 O.S.2001 § 172. In a case that interpreted a surety bond for performance of a construction contract, the Oklahoma Supreme Court also observed:

A contract consists of not only the agreement of the parties expressed in words, but also such covenants as are reasonably implied; and covenants are implied in a contract, first, when so clearly a part of the contract that the court can say the parties considered them so without the necessity of writing them into the contract, or second, where implying such covenants is necessary to carry out the expressed agreements.

*Wright v. Fidelity & Deposit Co. of Maryland,* 1935 OK 1215, ¶ 0, 176 Okla. 274, 54 P.2d 1084 (syllabus 2).

 ¶ 8 In view of these principles, we conclude that the parties to a bail bond reasonably expect, and the courts must reasonably imply, that the defendant who is released on bond will not violate the law while free on bond. A defendant who commits additional crimes while free on bond is in breach of the bond, and adversely effects the interests of *both* the State and the bondsman.

 ¶ 9 In addition, "[t]he common law imposes [an] implied covenant upon all contracting parties, that [no] party, because of the purposes of the contract, will act to injure the [other] parties' reasonable expectations nor impair the rights or interests ... to receive the benefits flowing from their contractual relationship." *First National Bank and Trust of Vinita v. Kissee,* 1993 OK 96, ¶ 24, 859 P.2d 502, 509 (footnote omitted). Under this rule, if either the State or bondsman have knowledge of the breach of the bond due to the defendant committing additional crimes while free on bond, the party with knowledge of the breach cannot act to injure the reasonable expectation of the other party to be notified of the breach, or act to impair the rights or interests of the other party to remedy such breach.

¶ 10 We think it is significant that formal charges were ultimately filed in Creek County for the crimes that Mr. Pyles committed while free on the Tulsa County bonds at issue in this case, and the State sought *additional bonds* on the subsequent charges. Clearly, the State regarded the commission of additional crimes by Mr. Pyles, while free on bond, to be a circumstance that warranted

increased security in the form of additional bonds to insure his appearance. Under such a circumstance, there is clearly an increased risk that the defendant will not appear.

¶ 11 The filing of additional charges in such cases (or at least arraignment by a magistrate following arrest) gives both the State and the bondsman the opportunity to protect their respective interests. Where charges or an arraignment are not immediately pursued, as in the instant case, because the State's law enforcement agents released the defendant from arrest to pursue law enforcement objectives, the bondsman on the initial appearance bond are denied any opportunity to assess their continued risk or to otherwise protect their interests. Under such a circumstance, the bondsman on the initial appearance bond is "in a substantially different position than he or she occupied before the change [*i.e.*, the defendant incurring additional charges] was made." *Vaughn*, 2000 OK 63, ¶ 12, 11 P.3d at 215 (citation omitted).

¶ 12 While the State may be free to not seek additional security and to take the increased risk under the circumstances of the instant case, it is not free to do so at the expense or to the prejudice of the sureties on outstanding appearance bonds, as discussed. We are reminded that "[t]he purpose of bail is to secure the appearance of the defendant

before the court [and] is not designed to enrich the public coffers." *Id.* at ¶ 18, 11 P.3d at 215 (citations omitted).

¶ 13 Sureties Inman and Dampf have met their burden to show that an increased risk was imposed on their bonds without notice by agents of the State who released Mr. Pyles following his arrest for additional crimes while free on bond.[1] We hold that such a circumstance materially alters and increases a bail bondman's risk as a matter of law and that such material increase in risk operates as a discharge of the bondsman's obligations. Accordingly, sureties Inman and Dampf were entitled to vacation of the forfeiture of their bonds and the trial court erred as a matter of law in denying vacation of the forfeitures.

¶ 14 REVERSED AND REMANDED WITH DIRECTIONS TO SET ASIDE THE FORFEITURE OF THE BONDS.

STUBBLEFIELD, Acting P.J., and RAPP, J. (sitting by designation), concur.

---

1. In reaching this holding, we are cognizant that the District Attorney of Tulsa County was as equally unaware of the actions of the Sapulpa police officers as the sureties herein. We are not suggesting that the District Attorney of Tulsa County is responsible for the acts of the Sapulpa police officers and wish to stress that the District Attorney of Tulsa County did nothing to cause the increased risk in this case. The District Attorney for Tulsa County, however, is not the only agent for the State whose dealings with defendant Pyles could affect the sureties risk on the bond. The Sapulpa police officers, as peace officers for the State, were also agents for the State whose actions could and did affect the sureties' risk. While the Sapulpa officers were probably unaware that their actions were affecting the risk on the outstanding bonds, such unawareness does not relieve the State, as creditor on the bond, of the consequences of the actions of these agents.