[No. G042328. Fourth Dist., Div. Three. June 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
INTERNATIONAL FIDELITY INSURANCE COMPANY, Defendant and
Appellant.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Nicole M. Walsh, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

FYBEL, J.—

### INTRODUCTION

International Fidelity Insurance Company (International Fidelity) issued a bail bond for the appearance in court of Daniel Rojas on criminal charges. When Rojas failed to appear, the bail was forfeited. International Fidelity's motion to vacate the forfeiture and exonerate bail was denied, and this appeal followed. We affirm.

We hold that by the express language of its bond, International Fidelity undertook to ensure Rojas's appearance to answer not only the charges alleged in the original complaint, but also those charges in the first amended information. Although Rojas was subject to a greater potential maximum penalty under the first amended information than he had been under the original complaint, the charges in the first amended information were based on the same acts alleged in the complaint. As a result, in a case of first impression in this state, we conclude the trial court did not err in denying the motion to vacate the forfeiture and exonerate the bond.

We also conclude the certificate of mailing of the notice of forfeiture, which was signed by a deputy clerk on behalf of the clerk of the court, was properly executed.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

In November 2006, Rojas was charged in a felony complaint with attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a)); second degree robbery (*id.*, §§ 211, 212.5, subd. (c)); and aggravated assault (*id.*, § 245, subd. (a)(1)). (All further statutory references are to the Penal Code, unless otherwise noted.) Sentencing enhancements for personal use of a deadly weapon, a knife (§§ 12022, subd. (b)(1), 1192.7), and infliction of great

bodily injury (§§ 12022.7, subd. (a), 1192.7, 667.5) were alleged. All crimes were alleged to have been committed against Can Quach on December 17, 2005.

International Fidelity issued bail bond No. II 429176 for Rojas's release from custody on November 13, 2006. Rojas was arraigned on the charges in the felony complaint on December 29, 2006.

In January 2007, the district attorney filed an amended felony complaint.[1] In addition to the crimes and enhancements alleged in the original complaint, the first amended complaint charged Rojas with committing second degree robbery against Thao Nguyen on December 17, 2005, and further alleged Rojas personally used a deadly weapon in doing so. In March 2007, a second amended complaint was filed; the same charges and enhancements were alleged against Rojas, but a second defendant, Juan Jeser Leon, was alleged to have committed the attempted murder and second degree robbery of Quach with Rojas.

In April 2007, Rojas was held to answer on all charges. The district attorney then filed an information, which added another count of second degree robbery committed by Rojas on December 17, 2005, against a third victim, Kim Tran; it was alleged that Rojas personally used a deadly weapon, a knife, in committing this crime, too. The information charged Leon with committing all of the aforementioned crimes, and alleged he, too, had personally used a deadly weapon in committing those crimes. Finally, on June 15, 2007, a first amended information was filed charging Rojas with two separate counts of the attempted premeditated and deliberate murder of Quach (§§ 187, subd. (a), 664, subd. (a)); three counts of second degree robbery, one each against Quach, Nguyen, and Tran (§§ 211, 212.5, subd. (c)); and two counts of aggravated assault against Quach (§ 245, subd. (a)(1)). The first amended information alleged that in committing the attempted murders and the robberies, Rojas personally used a deadly weapon, a knife (§§ 12022, subd. (b)(1), 1192.7), and further alleged that in committing all of the crimes charged, Rojas caused Quach to suffer great bodily injury (§§ 12022.7, subd. (a), 1192.7, 667.5). International Fidelity was never given notice of the amendments to the complaint and the information.

At the same time the first amended information was filed, the district attorney moved to increase bail, but the motion was denied. On May 13,

---

[1] On our own motion, we augment the record on appeal with the following documents, all of which were filed in the case of *People v. Rojas* (Super. Ct. Orange County, No. 06CF3544): (1) felony complaint, amendment No. 1, filed January 23, 2007; (2) felony complaint, amendment No. 2, filed March 22, 2007; (3) information, filed April 9, 2007; and (4) information, amendment No. 1, filed June 15, 2007. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

2008, Rojas failed to appear at trial, and a notice of bail forfeiture was mailed to International Fidelity on May 14, 2008. International Fidelity's motion to vacate the forfeiture and exonerate bail was denied; International Fidelity timely appealed.

DISCUSSION

I.

*DID THE ADDITION OF NEW CHARGES AND ENHANCEMENTS EXONERATE THE BAIL BOND?*

A.

*Standard of Review and Analysis of the Bond*

Although we normally review an order denying a motion to vacate the forfeiture of a bail bond for abuse of discretion (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5 [104 Cal.Rptr.3d 87] (*Bankers Ins. Co.*)), where the issue is one of statutory construction or contract interpretation, and the evidence is not in dispute, the de novo standard of review applies (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 350 [5 Cal.Rptr.2d 620]). We review the trial court's order in this case de novo because there is no extrinsic evidence to consider in interpreting the contract.

■ "A bail bond is a contract between the government and the surety. [Citation.] The surety's liability is limited to the contract's terms. [Citation.]" (*Bankers Ins. Co., supra*, 181 Cal.App.4th at p. 6.) International Fidelity argues that the addition of new charges and enhancements in the first amended information materially changed the terms of the contract by increasing its risk as surety, and thus exonerated the bond.

International Fidelity's liability under the bond is as follows: "Now, the INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation, hereby undertakes that the above-named defendant will appear in the above-named court on the date set forth to answer *any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her and all duly authorized amendments thereof*, in whatever court it may be prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation; or if he/she fails to perform either of these conditions, that the INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation will pay the People of

the State of California, the sum of One Hundred Thousand and no/100 Dollars ($100,000.00)." (Italics added.)

County counsel argues the bond required forfeiture after Rojas's failure to appear because the charges in the first amended information (the operative charging document at the time of the bond's forfeiture) were based on the same acts supporting the original complaint. International Fidelity disagrees and argues the bond should not have been forfeited because the increased charges materially increased the risk Rojas would flee. This disagreement poses a question of contractual interpretation in this case.

██ "The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] 'The words of a contract are to be understood in their ordinary and popular sense.' " (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505].) Although extrinsic evidence is admissible to prove a meaning to which a contract is reasonably susceptible (*ibid.*), no party offered any extrinsic evidence construing the terms of the bail bond, nor does any party contend the trial court failed to admit or consider any extrinsic evidence. "When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract." (*Ibid.*) ██ "California recognizes the objective theory of contracts [citation], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (*Id.* at p. 956.)

██ We hold the language in the bond obligated International Fidelity to guarantee Rojas's appearance on any charge in the amended information, as long as that charge was based upon the acts supporting the original complaint. The charges in the first amended information, although they increased Rojas's potential incarceration, were based on the same acts supporting the original complaint, as explained *post,* in part I.B.

International Fidelity argues the greater potential penalty Rojas faced following the filing of the first amended information so substantially increased his risk of flight that the terms of the bond were materially altered.[2]

---

[2] We invited the parties to submit supplemental letter briefs addressing the maximum potential prison sentences faced by Rojas under the original complaint versus the first amended information. International Fidelity contends the maximum sentence under the original complaint was 28 years to life, while the maximum sentence under the first amended information

We have read the one-page bond and it does not expressly refer to the level of a released defendant's flight risk. Rather, it refers to whether changes in the pleadings are based on the same acts. If International Fidelity entered into the contract—the bond—believing it would be exonerated if Rojas's flight risk increased due only to an increase in the charges pending against him, that was a belief based on International Fidelity's subjective intent, and is not relevant to the issue of interpretation of the bond. There is nothing in the bond or in any statute referring to increased flight risk as a term of the bond. The contracting parties made their deal, and we will enforce it.

## B.

### *Analysis of the Record*

At a hearing on June 15, 2007, the following colloquy occurred:

"The Court: What does the first amended [information] do? Adds one count of attempted murder and—

"[Deputy district attorney]: It adds one count of attempted murder and one count of [section] 245. It adds premeditation and deliberation of both the attempted murder counts.

"The Court: On the same person on the same day?

"[Deputy district attorney]: Right. There is a break—what happens, Your Honor, this is an armed robbery where they go into a market. In the course of the robbery the defendant pulls a knife and stabs the victim. The victim then flees, runs behind the counter, and the defendant then chases after the victim and stabs him a second time. [¶] So based upon the facts and the break, it was two distinct acts, the People believe it is two different attempted murders, two different mens rea."

The charges in the first amended information are based on the acts supporting the original complaint. One set of facts may give rise to many different criminal charges or enhancements, some of which might not be fully developed at the time the complaint, an amendment thereto, or even the original information is filed. Under the terms of the bond, as long as those

---

was 53 years to life. County counsel contends the maximum sentence under the original complaint was 17 years to life, while the maximum under the first amended information was life with the possibility of parole. We need not delve into the intricacies of sentencing law to determine why the parties' estimates of the maximum sentences differ so widely. For our purposes, it is enough to say that both parties agree the total potential sentence faced by Rojas increased substantially.

charges or enhancements arise out of the same facts that were alleged in the original complaint for which the bond was issued, there is no exoneration of the bond.

### C.

### Bankers Ins. Co. *and Other Authorities*

International Fidelity does not cite, and our independent research has failed to uncover, any California authority for the proposition that the addition of charges based on the same acts alleged in an original complaint, which materially increases the risk faced by the surety, automatically exonerates the bond.

*Bankers Ins. Co., supra,* 181 Cal.App.4th 1, is instructive and its reasoning is entirely consistent with ours. In that case, Bankers Insurance Company (Bankers) posted a $17,500 bond for Jaime Villa's custody release; the bond stated that Villa had been ordered to appear in court on charges arising under Health and Safety Code sections 11378 and 11379. (*Bankers Ins. Co., supra,* at p. 3.) Before Villa's appearance date, a criminal complaint was filed charging Villa under Health and Safety Code sections 11378, 11379, subdivision (a), and 11366.8, subdivision (a). (*Bankers Ins. Co., supra,* at p. 4.) Villa failed to appear at a later hearing, and the trial court ordered the bond forfeited. Summary judgment was entered against Bankers. In a motion to set aside the summary judgment, Bankers argued Villa's bail was improperly set too low, and should have been set at $115,000. "According to Bankers, the jail's mistake in improperly setting Villa's bail pursuant to the bail schedule prevented it from properly evaluating its risk in posting bail, thereby rendering the bond void." (*Ibid.*) The trial court denied Bankers's motion, and Bankers appealed. (*Id.* at p. 5.)

The appellate court affirmed. First, the court rejected Bankers's argument that it had a common law defense to the bond forfeiture because its risk under the bond had been "materially increased." (*Bankers Ins. Co., supra,* 181 Cal.App.4th at p. 6.) Next, the court held, "even though the complaint included charges under [Health and Safety Code] sections 11378 and 11379 that would have resulted in a higher bail amount based on the amount of drugs involved and a third charge that was not listed on the bond, under the terms of the 'undertaking provision,' it cannot be considered to be a unilateral and material *increase* in the risk assumed by Bankers. Bankers was free to monitor the case and determine what charges ultimately were made in the original complaint, and free to surrender Villa pursuant to Penal Code section 1300 if it believed the bond was inadequate to cover the flight risk presented by the complaint." (*Ibid.*) Finally, the court held: "[T]hat Bankers may have

analyzed its risk based on the bail set before the complaint was filed does not change the bond's language, which expressly states it undertook to guarantee Villa's appearance on 'any charge in any accusatory pleading based upon the acts supporting the complaint' and 'all duly authorized amendments thereof.'[3] . . . That higher bail might have been warranted, however, does not mean Bankers's risk materially increased, since the bond language encompassed the charges that ultimately were included in the complaint." (*Id.* at p. 7.)

Here, the first amended information was based on the same acts supporting the original complaint, but alleged additional charges. As explained, *ante*, and in *Bankers Ins. Co.*, the language of the bond controls, not the unilateral belief of one of the contracting parties.

As was true of the issuer of the bond in *Bankers Ins. Co.*, International Fidelity was free to monitor the case and surrender Rojas if, as it now contends, the new charges increased Rojas's flight risk. This observation is especially compelling because it was almost a full year between the time the first amended information was filed and the district attorney's motion to increase bail was denied, and the time Rojas failed to appear in court. Specifically, 333 days passed between the date on which the first amended information was filed and the district attorney requested an increase in bail, on the one hand, and the date on which Rojas failed to appear, on the other hand; during those 333 days, Rojas appeared in court 13 times before absconding.

Two California cases cited by International Fidelity are inapposite. In *People v. Surety Ins. Co.* (1983) 139 Cal.App.3d 848, 849 [189 Cal.Rptr. 89], and *People v. Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 435 [123 Cal.Rptr. 246], the defendants were charged in felony complaints and bail bonds were posted. The original complaints were dismissed and new complaints were filed, with bail transferred to the new complaints without providing notice to the sureties. (*People v. Surety Ins. Co., supra,* at p. 849; *People v. Resolute Ins. Co., supra,* at p. 435.) Those cases were governed by section 1303, which provides: "If an action or proceeding against a defendant who has been admitted to bail is dismissed, the bail shall not be exonerated until a period of 15 days has elapsed since the entry of the order of dismissal. If, within such period, the defendant is arrested and charged with a public offense arising out of the same act or omission upon which the action or proceeding was based, the bail shall be applied to the public offense. *If an undertaking of bail is on file, the clerk of the court shall promptly mail notice to the surety on the bond and the bail agent who posted the bond whenever the bail is applied to a*

---

[3] The relevant language of the bond in *Bankers Ins. Co.* is identical to that in the bond issued by International Fidelity in this case.

*public offense pursuant to this section.*" (Italics added.) Those cases, therefore, stand for the proposition that when bail is transferred from one criminal action to a new one, notice must be provided to the surety, as required by statute.

International Fidelity also cites to cases from other jurisdictions, in which the courts determined that the addition of charges materially increased the risk faced by the surety, and therefore exonerated the bond. (See *People v. Jones* (Colo.Ct.App. 1994) 873 P.2d 36; *People v. Smith* (Colo.Ct.App. 1982) 645 P.2d 864; *Integrity Bail Bonds v. Pinellas County Bd. of County Commissioners* (Fla.Dist.Ct.App. 2004) 884 So.2d 85; *American Bankers Ins. Co. v. Monroe County* (Fla.Dist.Ct.App. 1994) 644 So.2d 560; *State v. Ceylan* (2002) 352 N.J. Super. 139 [799 A.2d 685]; *State v. Pyles* (2002) 2002 OKCIVAPP 91 [55 P.3d 473].) In none of those cases did the court state or address the content of the bail bond contract, much less analyze whether the bond, like the bond at issue here, permitted filing amended complaints or amendments to the information based on the same original pleaded facts. In several of the cases, the material change involved new charges arising out of a new criminal matter filed in a different case, which is not the situation here. (See, e.g., *State v. Pyles, supra,* 55 P.3d 473; *State v. Ceylan, supra,* 799 A.2d 685.)

## II.

### Was the Certificate of Mailing Properly Executed by the Clerk of the Court?

International Fidelity also argues that the notice of forfeiture, signed by a deputy clerk rather than by the clerk of the court, deprived the court of jurisdiction and thereby exonerated the bond. This issue, which does not involve questions of statutory construction, is reviewed for abuse of discretion. (*Bankers Ins. Co., supra,* 181 Cal.App.4th at p. 5.)

Section 1305, subdivision (b) provides: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . . At the same time, the court shall mail a copy of the forfeiture notice to the bail agent whose name appears on the bond. The clerk shall also execute a certificate of mailing of the forfeiture notice and shall place the certificate in the court's file. . . . [¶] . . . [¶] The surety . . . shall be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the

bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond."

The notice of forfeiture of bail bond mailed to International Fidelity, and its certificate of mailing, both have the following signature block:

"Alan Slater, Chief Executive Officer

"By: [/s/]

"Accounting Specialist." (Boldface omitted.)

The notice of felony bond forfeiture provided to the district attorney's extradition deputy includes the following signature block:

"Alan Slater

"Clerk of the Court

"By: J.Hsiao [/s/]

"Deputy Clerk."

The two notices and certificate of mailing bear the same signature.

■ Initially, we note that even if the explicit requirements of section 1305 are not met, as long as the surety has actual notice of the bond forfeiture, the goals of section 1305 have been satisfied. (*American Contractors Indemnity Co. v. County of Orange* (2005) 130 Cal.App.4th 579, 584 [29 Cal.Rptr.3d 916].) There is no dispute that International Fidelity had actual notice of the bond forfeiture, so any lack of signature by the clerk of the court did not affect the proceedings.

■ International Fidelity fails to cite us to any authority holding that a document signed by a deputy clerk on behalf of the clerk of the court is not effective. To the contrary, the relevant cases hold when a signature of the clerk of the court is required, the signature of a deputy clerk will suffice. In *People v. Mendez* (1924) 193 Cal. 39, 44–45 [223 P. 65], overruled on other grounds in *People v. McCaughan* (1957) 49 Cal.2d 409, 420 [317 P.2d 974], the Supreme Court held that when the deputy county clerk signed an indictment, which had unquestionably been presented by the foreman of the grand jury and filed in the court clerk's office, any failure to have the indictment authenticated by the clerk of the court, "if it be conceded to be a defect, was nothing worse than a mere irregularity of procedure which did not

operate to prejudice any right of either defendant." Similarly, in *People v. Torterice* (1924) 66 Cal.App. 115, 119–120 [225 P. 760], the defendant's perjury conviction was affirmed where the defendant swore an oath before a deputy clerk, "acting in behalf of the clerk in the matter," and "[t]he certificate at the end of the affidavit immediately following the signature of the defendant sets forth that the affidavit was subscribed and sworn to before the county clerk, acting by said deputy."

## DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.