Filed 8/3/23  Lundin v. WKS Restaurant Corp. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| LEONARD H. LUNDIN et al., | |
| Plaintiffs and Appellants, | G060936, G061455 |
| v. | (Super. Ct. No. 30-2018-01027512) |
| WKS RESTAURANT CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and postjudgment orders of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed.

Snell & Wilmer, Sean M. Sherlock and Jing (Jenny) Hua; Klapach & Klapach and  Joseph S. Klapach for Plaintiffs and Appellants.

Smith, Steven C. Smith and Stephen C. Biggs for Defendant and Respondent.

\*          \*          \*

Defendant and cross-plaintiff WKS Restaurant Corporation (WKS) purchased an El Pollo Loco business in 2004 (the 2004 sale) from Northridge Foods, Inc. (Northridge Foods), the predecessor in interest of plaintiff Leonard Lundin. Northridge Foods owned the restaurant building (the building) but leased the land from a nonparty. In the 2004 sale, Northridge Foods assigned the ground lease to WKS and executed a separate agreement with WKS for possession of the building.

A dispute arose in 2018. WKS maintained it had purchased title to the building in the 2004 sale, while Lundin claimed WKS had only obtained a leasehold interest. Lundin and several other parties then filed this action against WKS, and WKS filed a cross-complaint against them. After Lundin and the other plaintiffs had presented their evidence on the complaint at trial, WKS moved for judgment under Code of Civil Procedure section 631.8, subdivision (a).[1] The trial court granted the motion, finding WKS owned the building. It entered judgment in favor of WKS on the complaint and the cross-complaint and awarded WKS fees and costs.

Lundin, along with several other appellants identified below, appeal the judgment and the fees and costs award. Primarily, they argue the court incorrectly interpreted the underlying contracts for the 2004 sale in finding that WKS owned the building. We disagree. The court's interpretation of these contracts is supported by the extrinsic evidence admitted during trial, which indicates the parties intended for the 2004 sale to include the building's title.

Lundin and the other appellants also argue the court made a procedural error by simultaneously granting judgment on the cross-complaint and the complaint. But to the extent any error was committed, it was harmless. The court still would have found that WKS owned the building even without the alleged error.

_____

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

For these reasons, we affirm the judgment. Lundin also asks that we reverse the court's orders awarding fees and costs if we reverse the underlying judgment. Since we affirm the judgment, we also affirm the court's award of fees and costs.

I

FACTS AND PROCEDURAL HISTORY

A. *Background*

Lundin and three nonparties – Diane Kolodziejski, Walter Beck, and William Brusslan – formed Northridge Foods in 1987 to construct and operate an El Pollo Loco restaurant. Northridge Foods then entered into a ground lease for a vacant plot of land in Northridge with nonparty Balboa Nordhoff Center (Balboa).[2] The initial term of the ground lease expired on December 31, 2018. The ground lease provided three five-year options, which, if exercised, would extend the term to December 31, 2033.

After leasing the land, Northridge Foods constructed the building. Per the ground lease, Northridge Foods held title to the building while the ground lease was in effect, but title to the building would pass to Balboa upon the ground lease's expiration.

Northridge Foods sold its interest in the El Pollo Loco business to WKS in the 2004 sale. The primary dispute in this action is whether WKS purchased title to the building in the 2004 sale. WKS contends that it did, while Lundin contends WKS only obtained a leasehold interest.

Prior to the closing of the 2004 sale, WKS and Northridge entered into a letter of intent confirming the terms of the sale (the letter of intent). The letter of intent stated WKS would "assume the existing ground lease" and "enter into a new mutually agreed upon building lease at a total rent of [$48,000] per year." The letter of intent further specified WKS would acquire "all the assets involved in the operation" of the El

_____

[2] It appears Lundin has an interest in Balboa, but the parties have not explained the extent of his interest.

Pollo Loco restaurant. These assets included, "all furniture, *fixtures*, leases, *leasehold improvements*, small tools, point of sale computer systems, software and hardware, equipment packages, small wares, signs and licenses used in the operation of the restaurants." (Italics added.)

The parties later entered into several agreements relating to the 2004 sale (the 2004 sale agreements), including an Asset Purchase Agreement (the purchase agreement), a Standard Industrial/Commercial Single-Tenant Lease (the building lease), and an Assignment of and Second Amendment to Lease (the assignment) that transferred Northridge Foods' interest in the ground lease to WKS.

Under the purchase agreement, WKS agreed to purchase all "Assets" of Northridge Foods for $1,080,750. "Assets" was defined to include "all tangible personal property of any kind located in the Restaurant[] or on the Real Property, including, but not limited to, equipment, appliances, machinery, tables, chairs, other furniture, bars, tableware, cookware, utensils, furnishings, signage, *leasehold improvements*, *fixtures*, uniforms, supplies, food and beverage inventory . . . , and advertising and promotional materials. . . ." (Italics added.)

The building lease utilized a modified American Industrial Real Estate Association form. Like the ground lease, it expired on December 31, 2018. It also provided four five-year options, which were synchronized to the ground lease's options. The building lease provided for base rent of $4,000 per month, which gradually increased over the course of the initial term and also increased for each option period, if exercised.

The building lease was accompanied by a two-page Addendum to Lease (the addendum). The addendum provided, "[t]he [building lease] is supplemented in each and all of the respects set forth in the Addendum. In the event of any conflict between the printed portions or other portions of the [building lease] and the Addendum, the Addendum shall prevail."

4

In the building lease, the parties crossed out section 7.4, which addressed ownership of certain alterations and utility installations by WKS. Generally, the deleted section 7.4 stated that any alterations and utility installations performed by WKS would be a part of the "Premises," and would become Northridge's property at the expiration of the building lease. The addendum added a new section 7.4 (section 7.4), which stated, "All Alterations and Utility Installations made by [WKS] shall be the property of [WKS]. On the termination or expiration of the Lease or any extension thereof, *the Premises* . . . shall be the property of [WKS]." (Italics added.) "Premises" was defined by the building lease to mean, "*[t]hat certain building* including all improvements therein or to be provided by [Northridge] under the terms of [the building lease]." (Italics added.)

The purchase agreement, the assignment, the building lease, and the addendum were all signed by Beck and Brusslan for Northridge Foods. They were not signed by Lundin. Roland Spongberg negotiated the 2004 sale for WKS, while Beck and Brusslan negotiated for Northridge Foods. Lundin was not directly involved in the negotiations with WKS.

WKS's purchase of the El Pollo Loco business closed in December 2004. The escrow instructions show WKS paid a total of $1,080,750. Of this amount, $650,000 was allocated to "Building/Leasehold Improvements," and $100,000 was allocated to "Leasehold Site Improvements." The remainder of the purchase price was allocated to furniture/fixtures/equipment, signage, franchise fees, and goodwill.

Before the 2004 sale closed, however, Lundin sued Beck and Brusslan for embezzlement, fraudulent appropriations of funds, breaches of fiduciary duty, and other claims. Diane Kolodziejski died while this litigation was pending, and her Northridge Foods stock was distributed to her children, Christopher and Cynthia Kolodziejski.[3] After Diane passed, Lundin, Breck, and Brusslan settled their lawsuit. Under the

---

[3] Since this lawsuit involves multiple people from the Kolodziejski family, we refer to each member by their first name.

5

settlement, Beck and Brusslan gave up their stock in Northridge Foods. Half of it went to Lundin, and the other half went to Christopher and Cynthia.

Northridge Foods dissolved in 2008. After it dissolved, WKS made payments owed under the building lease to Lundin, who distributed it among himself, Christopher, and Cynthia.

B. *This Lawsuit*

In April 2018, WKS sent Lundin a letter to remind him of the building lease's expiration at the end of 2018. It also asked him to sign a memorandum confirming that under section 7.4, WKS would own title to the building when the building lease expired. Lundin refused to sign the memorandum and claimed WKS had misinterpreted the building lease.

A few months later, WKS exercised its option to extend the ground lease until December 31, 2023. It did not exercise its option to extend the building lease, and it stopped paying Lundin rent on December 31, 2018, when the building lease expired.

Prior to the building lease's expiration, Northridge Foods filed a complaint against WKS (the complaint) for (1) anticipatory breach of contract, and (2) declaratory relief. The first claim asserted WKS intended to remain in the building without paying rent after the building lease expired. The second claim sought a declaratory judgment stating WKS did not own the building and was required to exercise an option and pay rent to retain possession. Lundin was later substituted in as plaintiff for Northridge Foods, and Christopher and Cynthia were also added as plaintiffs (collectively, plaintiffs).

WKS filed a cross-complaint (the cross-complaint) asserting three claims against cross-defendants Northridge Foods, Lundin, Lundin Development Co., Christopher, Cynthia, the Lundin Living Trust dated March 26, 1998 (the Lundin trust), and the Cynthia Irene Kolodziejski Living Trust dated April 14, 2006 (Cynthia's trust).

6

First, WKS sought to quiet title to the building in its favor. Second, WKS sought a declaratory judgment that it owned the building as of December 31, 2018. Third, WKS alleged Northridge Foods had breached the purchase agreement by claiming ownership to the building.

A bench trial began in May 2021. The primary dispute at trial was whether WKS owned the building. WKS asserted that Northridge Foods had transferred the building's title to WKS either in 2004, at the 2004 sale's closing, or in 2018, following the building lease's expiration. Because the court found the terms of the 2004 sale agreements were ambiguous, it allowed plaintiffs to introduce extrinsic evidence.

After plaintiffs presented their evidence, WKS moved for judgment on the complaint under section 631.8, subdivision (a). The court then allowed plaintiffs to reopen their case and present additional evidence. After plaintiffs closed their case for a second time, the court orally pronounced that WKS owned the building and granted its motion for judgment. Among other things, the court noted, "it does appear . . . this whole deal was focused on buying the business and the building."

The court stated it would grant WKS's motion for judgment on the complaint, and the court and the parties turned to the cross-complaint. WKS dropped its request for damages and rested its case on the cross-complaint. It then requested judgment on the cross-complaint as to the sole remaining issue – the building's ownership. Based on its findings on the complaint, the court granted judgment to WKS on the cross-complaint. No one argued that judgment on the cross-complaint was improper.

The court entered judgment in favor of WKS on September 15, 2021 (the judgment). The judgment pronounced that (1) WKS owned the building subject to the ground lease's terms; (2) title to the building was quieted in favor of WKS; (3) Northridge Foods and its successors had no interest in the building as of December

7

31, 2018; and (4) Lundin and the other cross-defendants had breached the building lease by failing to transfer the building's title to WKS after the lease expired.

The court later issued a statement of decision, summarizing the evidence and findings supporting its judgment granting WKS ownership of the building. Significantly, it declined to address WKS's theory that the building's title had transferred to WKS in 2004, at the close of the 2004 sale. The court found this issue to be immaterial to the outcome of the case. The relevant question was whether WKS owned the building as of December 31, 2018, when it stopped paying rent. As the court explained, "a finding that the transfer occurred on any date before December 31, 2018 would have no meaningful impact on the Parties or the case and is therefore moot."

WKS subsequently filed a motion for attorney fees and costs. The court granted the motion and awarded WKS $68,646.63 in costs and $346,313 in fees (the fees and costs award).

Two appeals were filed in this action by different plaintiffs and cross-defendants. The first appeal (G060936) seeks reversal of the judgment (the judgment appeal). It argues the trial court incorrectly found that WKS owns the building. The second appeal (G061455) challenges the fees and costs award (the fees and costs appeal). It asks that we reverse the fees and costs award if we reverse the judgment.

II

DISCUSSION

A. *Lundin's Motion for Substitution of Appellants*

The judgment appeal was filed by Lundin, Christopher, Cynthia, and Cynthia's trust (the judgment appeal). The fees and costs appeal was filed by Lundin Development Co., the Lundin trust, and Lundin for himself and purportedly as assignee of the interests of Christopher, Cynthia, and Cynthia's trust. We consolidated the two appeals.

8

Lundin moves to substitute himself for Christopher, Cynthia, and Cynthia's trust (the Kolodziejski parties) in the consolidated appeal. He asserts the Kolodziejski parties assigned him their claims in the underlying action and their rights in this appeal. WKS opposes the motion as to the fees and costs appeal. First, WKS contends the Kolodziejski parties are not parties to the fees and costs appeal because they did not file a notice of appeal as to the fees and costs award. It likewise maintains that Lundin's attempt to file a notice of appeal on their behalf is invalid. Second, WKS asserts that even if the Kolodziejski parties are parties to the fees and costs appeal, it is unnecessary to grant Lundin's substitution. We agree with WKS's second argument. As such, we grant Lundin's motion for substitution as to the judgment appeal but deny it as to the fees and costs appeal.

"Substitution of parties in an appeal or original proceeding must be made by serving and filing a motion in the reviewing court." (Cal. Rules of Court, rule 8.36(a).) The rule permitting substitution "is based on case law which deals with routine substitutions of parties pending appeal, *made necessary by an objective event* such as death of a party or transfer of his interest." (*Hollaway v. Scripps Memorial Hospital* (1980) 111 Cal.App.3d 719, 724, fn. 1 (*Hollaway*), italics added; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 5:228 ([party can move for a substitution "[i]f a substitution of parties in a pending appeal is necessitated by a party's death or transfer of interest"].).)[4]

Lundin has not shown it is necessary to substitute himself for the Kolodziejski parties on the fees and costs appeal. It is undisputed the Kolodziejski parties remain liable for any fees and costs awarded against them. They have not

---

[4] *Hollaway* cited California Rules of Court, rule 48, which is the predecessor to rule 8.36. (*Hollaway*, *supra*, 111 Cal.App.3d at p. 724, fn. 1; Cal. Rules of Court, rule 8.36, formerly rule 48, adopted, eff. Jan. 1, 2005. Renumbered rule 8.36, eff. Jan. 1, 2007, as amended, eff. Jan. 1, 2018.)

assigned any such liability to Lundin.  Rather, Lundin has only agreed to indemnify them for any such fees and costs.  Since the Kolodziejski parties still remain liable to WKS for any fees and costs awarded, the proposed substitution is unnecessary.  As such, we deny Lundin's motion for substitution as to the fees and costs appeal.  (See *Hollaway*, *supra*, 111 Cal.App.3d at p. 724, fn. 1.)

The judgment appeal solely concerns the building's ownership.  The Kolodziejski parties have assigned Lundin "any and all right, title, and interest, he, she, or it has in any claim related to Northridge Foods, *the assets of Northridge Foods*, the Action, and the Appeal."  (Italics added.)  Since the Kolodziejski parties have assigned whatever interest they may have in the building and the related claims to Lundin, he may substitute in for them as to the judgment appeal.  (See *Hollaway*, *supra*, 111 Cal.App.3d at p. 724, fn. 1.)  Due to this ruling, Lundin is now the only appellant as to the judgment appeal.

*B.  Ownership of the Building*

*1.  Standard of review*

The judgment appeal asks whether the trial court correctly ruled that WKS owns the building.  The parties agree the answer turns on contractual interpretation, but they dispute the applicable standard of review for interpreting the relevant contracts.  Lundin argues we should review them de novo.  WKS contends we should apply the more deferential substantial evidence standard since the court considered extrinsic evidence.  We agree with WKS.

De novo review applies when a trial court interprets a contract based solely on its text.  (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1395.)  But the standard of review may change if the contract's text is ambiguous and the court considers extrinsic evidence.  "[T]he substantial evidence standard of review applies when . . . conflicting extrinsic evidence is admitted to assist the court in

10

interpreting the contract. [Citation.] However, if interpretation of the contract does not turn on the credibility of conflicting extrinsic evidence, the trial court's interpretation of the contract is a question of law we review de novo, or independently." (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1110; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 ["'It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence'"].)

Here, it is undisputed the trial court considered extrinsic evidence when interpreting the 2004 sale agreements. Lundin argues there are no credibility conflicts in the relevant extrinsic evidence, thus, we must apply de novo review. We disagree.

To determine the building's owner, the court reviewed the 2004 sale agreements. It allowed extrinsic evidence concerning whether WKS and Northridge Foods intended for the 2004 sale to include the building's title. As explained in the statement of decision, there was conflicting evidence on this point from Lundin and Spongberg. Lundin testified Northridge Foods' shareholders intended to keep title to the building and only give WKS a leasehold interest. In contrast, Spongberg testified the parties intended to transfer the building's title to WKS through the 2004 sale. He explained the building lease was a financing mechanism for the purchase and there was no obligation for WKS to make payments on the building after the building lease expired.

The court found Spongberg's account to be more credible than Lundin's. In the statement of decision, the court observed that even if Lundin did not want to sell the building, "'it appears that Beck and Brusslan entered into an agreement that sold the building or lease.'" Further, during trial, the court noted that Lundin admitted he "wasn't part of the [2004 sale] transaction," and that Beck and Brusslan, who were allegedly cheating Lundin, may not have been honest with him about their intentions. Because the court's interpretation of the 2004 sale agreements relied on the resolution of credibility

11

issues, the substantial evidence standard applies. (*Tribeca Companies, LLC v. First American Title Ins. Co.*, *supra*, 239 Cal.App.4th at p. 1110.)

In response, Lundin argues the above testimony from Lundin and Spongberg regarding the intent of the parties is irrelevant to the judgment appeal. He believes the only relevant evidence is (1) the building lease, (2) the fact that the building lease's options run in sync with the ground lease's options, and (3) Spongberg's testimony that he requested the options for the building lease. Lundin asserts this evidence is uncontested, therefore, de novo review applies.

Lundin's argument is based on a gross misreading of the judgment and the statement of decision. As discussed above, WKS advanced two theories at trial as to when it acquired title to the building: (1) in 2004, after the 2004 sale closed; or (2) on December 31, 2018, after the building lease expired. Based on these two theories, Lundin divides the evidence into categories: evidence relevant to the first theory and evidence relevant to the second theory. The court declined to rule on the first theory because the outcome would be the same regardless of whether title passed in 2004 or 2018. Because the court declined to rule on the first theory, however, Lundin argues we should not consider any evidence relevant to the first theory. Rather, we only need consider evidence relevant to the second theory. Lundin believes the testimony from himself and Spongberg and all other evidence concerning the parties' intent behind the 2004 sale is only relevant to the first theory. Thus, he asserts it is irrelevant to this appeal. He maintains the only evidence relevant to the second theory is the three pieces of evidence cited above, therefore, it is the only evidence we need to consider.

Lundin's argument is untenable. While the court declined to rule on whether title passed in 2004, it did not reject this theory. Nor does its failure to rule on this theory render it irrelevant to the court's ruling. The opposite is true. The statement of decision shows the court's analysis on the ownership issue primarily focused on whether the parties intended to include the building in the 2004 sale.

12

For instance, the statement of decision provides, "[t]he Court finds the parties intended to transfer the El Pollo Loco Building to WKS when Section 7.4 of the Building Lease was removed by the parties" and replaced with section 7.4 in the addendum. It further explains, "WKS agreed to a 'Building Lease' of $48,000 per year only as a means to finance the purchase of [Northridge Foods'] assets. The 'Building Lease' was only a mechanism of financing. . . . This financing arrangement . . . was to terminate [on December 31, 2018,] when no further payments were due to the Sellers by WKS. There was no obligation for WKS to pay the Building Lease payments past . . . December 31, 2018. The Building Lease provides that the assets were to be transferred to WKS at the end of 14 years and upon faithful payment of the Building Lease payments, the assets were WKS' and no one else could make a claim to the assets."[5]

Moreover, the statement of decision contains a "Findings" section, which lists the court's findings supporting its ruling. The evidence listed in this section contains far more than the three pieces of evidence Lundin identifies above. For example, the court found the parties' conduct after the 2004 sale shows they intended to transfer the building's title to WKS in the sale. The court also credited Spongberg's testimony "that he thought WKS bought the building in 2004, and wanted to make it clear that at the end of 2018 WKS owned the building." The court expressly "accept[ed] these statements as true."

---

[5] Lundin claims the court "'decline[d] to rule' on [the] theory" that the building lease was used as a financing vehicle for the purchase of the building. (Quoting the statement of decision.) This mischaracterizes the statement of decision. The full quote reads, "[t]he Court *declines to rule on [WKS's] claim that the Building transferred in 2004* because it finds and accepts the testimony that the Building is the property of WKS on and after December 31, 2018." (Italics added.) Nothing from this passage shows the court declined to rule on the financing-vehicle theory. Indeed, the court accepted this theory in the statement of decision.

Given the statement of decision, Lundin's position that this appeal turns solely on the text of the building lease and evidence concerning the building lease's options is not well taken. This argument is easily disproved by the 21-page statement of decision explaining the court's reasoning for granting WKS ownership of the building. In short, Lundin has failed to show the court's ruling "does not turn on the credibility of conflicting extrinsic evidence." (*Tribeca Companies, LLC v. First American Title Ins. Co.*, *supra*, 239 Cal.App.4th p. 1110.) As such, the substantial evidence standard applies. (*Ibid.*)

Under the substantial evidence standard, "'we must accept any reasonable interpretation [of the relevant contracts] adopted by the trial court.'" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266–1267.) We must also "'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].'" (*Id*. at p. 1266.)

### 2. Merits

As set forth above, Lundin has taken a very narrow view of the evidence relevant to this appeal. Consequently, his briefs omit nearly all the evidence discussed by the trial court in its statement of decision. WKS argues that since he has failed to set forth all the material evidence supporting the court's judgment, he has waived any argument that the judgment is unsupported by sufficient evidence. We agree.

"When appellants challenge the sufficiency of the evidence, all material evidence on the point must be set forth and not merely their own evidence. [Citation.] Failure to do so amounts to waiver of the alleged error and we may presume that the record contains evidence to sustain every finding of fact." (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255.) The waiver theory arises from the principle that "[t]he judgment is presumed to be correct. [Citation.] And we presume that the

14

record contains evidence to sustain every finding of fact. [Citation.] It is the appellant's burden to demonstrate that it does not." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

Here, Lundin has not attempted to address the sufficiency of the evidence. He only argues our review should be de novo. But, as set forth above, this position is untenable given the statement of decision. Indeed, Lundin fails to discuss most of the evidence contained in the statement of decision's "Findings" section, which lists specific findings relevant to the court's ruling. The evidence in this section generally shows the parties intended the 2004 sale to include ownership of the building:

- Plaintiffs never purchased insurance on the building, and WKS never demanded that it do so.

- WKS made substantial improvements between 2004 and 2018 without plaintiffs' consent, and plaintiffs never demanded preapproval for improvements.

- The escrow instructions indicate WKS bought the building for $750,000 of the allocated purchase price.

- Northridge Foods did not depreciate the building after 2004, nor did it show its failure to do so was for any reason other than the sale of the building.

- Some of the WKS's 1099's indicated its payments to Lundin "were for non-employee compensation," while others indicated the payments were for "rent."

- The 1099's that Lundin sent to Christopher and Cynthia stated "the payments were for non-employee compensation," not rent.

- "The evidence was unrefuted that the building lease terminated by its own terms" at the end of 2018.

- WKS was not required to exercise any of the building lease's options.

- "The building lease options were not tied to the ground lease other than to have co-terminus dates if exercised."

15

- Spongberg believed WKS bought the building in 2004, and wanted to make clear that WKS owned the building at the end of 2018.
- Spongberg testified he wanted options for the building lease in case he sold the restaurant.
- The plain language of section 7.4 supported WKS's belief that title to the building passed to WKS after the building lease expired.

Since Lundin failed to include most of this evidence in his briefs, he has waived any claim that the judgment is unsupported by the record. (*Jordan v. City of Santa Barbara*, *supra*, 46 Cal.App.4th at p. 1255.)

Even though we are not required to do so, given Lundin's waiver of the argument, we briefly summarize the evidence supporting the trial court's decision. First, section 7.4 states, "[o]n the termination or expiration of the [building lease] or any extension thereof, *the Premises . . . shall be the property of Lessee*." "Premises" is defined in the building lease to include the building. Second, the letter of intent and the purchase agreement specify the 2004 sale included all "leasehold improvements" and "fixtures," which can be reasonably interpreted to include the building. (See Civ. Code, § 660 [a building that permanently rests on the land is affixed to it].) Third, the extrinsic evidence bullet pointed above supports the trial court's finding that the parties intended the 2004 sale to include title to the building. Fourth, as stated in the preceding section, Spongberg testified that the parties intended to include the building's title in the 2004 sale. He likewise testified the building lease was meant to be a financing vehicle for WKS's purchase of the building. Based on this evidence, the court's ruling that WKS owns the building is supported by substantial evidence, and the court's interpretation of the 2004 sale agreements is reasonable. Thus, we affirm the judgment. (See *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 742.)

Lundin argues the court's interpretation of section 7.4 conflicts with the existence of the building lease's options, which grant WKS four five-year options that

16

run concurrently with the ground lease's options. He argues there would be no reason to include these options if the parties had intended to transfer title to the building after the initial term expired in 2018. If anything, this evidence conflicts with the above evidence showing the parties intended to include the building's title in the 2004 sale. We do not reweigh these conflicts and disputes on appeal. (*ASP Properties Group, L.P. v. Fard, Inc.*, *supra*, 133 Cal.App.4th at p. 1266.) Under substantial evidence review, "'it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143, italics omitted.)

Further, the trial court explained why it was not swayed by this argument: "[W]hile there were options granted to WKS under the building lease, the options were not required to be exercised by WKS. The building lease options were not tied to the ground lease other than to have co-terminus dates if exercised. The methods and dates of exercise of the options (when compared between the ground lease and the building lease) were not the same. Roland Spongberg essentially testified that he thought he wanted the options on the building lease so that he could sell the operating restaurant which was then situated in a market which his company did not service." Lundin does not explain why these findings are unsupported by the evidence.

Finally, Lundin argues the court improperly relied on testimony from plaintiffs' own expert witness. Their expert witness admitted during cross-examination that under section 7.4, the building became WKS's property at the expiration of the building lease. Lundin asserts this expert testimony was inadmissible because it provided a legal interpretation of a contract. (Citing *Kasem v. Dion-Kindem* (2014) 230 Cal.App.4th 1395, 1401.) This argument is unpersuasive for two reasons.

First, none of the plaintiffs objected to the testimony. "To obtain reversal based on the erroneous admission of evidence, the record must show a timely objection making clear that specific ground. [Citation.] Lack of such objection deprives the

17

proponent of the evidence an opportunity to establish a better record or some alternative basis for admission." (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726.) Lundin argues there was no need to object because the court later acknowledged that some of the expert's opinions were improper legal conclusions. But Lundin fails to cite any authority stating the court's later recognition of improper testimony absolves plaintiffs of their obligation to object.

Second, even if the evidence was inadmissible, there was no miscarriage of justice. (Evid. Code, § 353, subd. (b).) A miscarriage of justice occurs when the reviewing court believes "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 692.) "[A] 'probability' in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, italics omitted.) As shown above, the trial court's ruling was supported by substantial evidence. The expert's testimony was cumulative. Indeed, the expert's testimony is not cited in the "Findings" section of the statement of decision. Thus, even if the evidence had been excluded, it is not reasonably probable that Lundin would have obtained a better result.

## C. Judgment on the Cross-Complaint

During a bench trial, section 631.8, subdivision (a), allows a party to move for judgment after the adverse party has presented its evidence.[6] As Lundin reads this

---

[6] "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party . . . or may decline to render any judgment until the close of all the evidence. . . . Such motion may also be made and granted as to any cross-complaint." (§ 631.8, subd. (a).)

statute, after the plaintiff has presented its case, a defendant/cross-complainant can only move for judgment on the complaint. It must then present evidence on the cross-complaint and allow the plaintiff/cross-defendant an opportunity to put on its defense. Lundin contends the court erred by simultaneously granting WKS's motion for judgment as to the complaint and the cross-complaint. He asserts this error was structural and requires automatic reversal.

We are not aware of any published cases addressing whether a defendant/cross-complainant can simultaneously move for judgment on the complaint and the cross-complaint. But we need not address this issue. Even if the court erred by granting judgment on the cross-complaint, the error was not structural and Lundin has not shown a miscarriage of justice.

Generally, a reviewing court will not set aside a judgment due to a trial court error unless "it resulted in a miscarriage of justice," also known as harmless error analysis. (Cal. Const., art. VI, § 13; *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) This general rule contains an exception for structural errors. When an error is structural, "reversal is required without regard to the strength of the evidence or other circumstances." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534.)

"Structural errors affect 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.' [Citation.] Such errors are not subject to the conventional harmless error analysis because they affect the entire conduct of the trial from beginning to end. [Citations.] 'In the civil context, structural error typically occurs when the trial court violates a party's right to due process by denying the party a fair hearing. [Citation.] Structural errors requiring automatic reversal include denying a party's request for a jury trial [citation] and violating a party's right to present testimony and evidence [citation].'" (*Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1527.) "Structural errors require per se reversal 'because it cannot be fairly determined

19

how a trial would have been resolved if the grave error had not occurred.'" (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 950–951.)

"But '[c]ategorization of an error as structural represents "the exception and not the rule."' [Citation.] '[A] strong presumption' exists *against* finding that an error falls within the structural category, and 'it will be the rare case' where an error—even 'a constitutional violation' — 'will not be subject to harmless error analysis.'" (*F.P. v. Monier*, *supra*, 3 Cal.5th at p. 1108.)

Lundin was not deprived of a fair hearing on WKS's cross-complaint. After WKS dropped its damages claim, the cross-complaint raised the same issue as the complaint: who owns the building? Lundin was given a fair opportunity to litigate this question when presenting plaintiffs' case on the complaint. Plaintiffs were even allowed to reopen their case and present additional evidence. Thus, there is no reason the alleged error should be categorized as structural. (See *Aulisio v. Bancroft*, *supra*, 230 Cal.App.4th at p. 1527.)

Under the harmless error standard, "[r]eversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.) That standard has not been met. Lundin has not cited any evidence that plaintiffs could have introduced in defending against the cross-complaint that they could not have introduced when trying the complaint. Had the court tried the cross-complaint, there is no basis to believe it would have found that WKS did not own the building.

Lundin also argues the trial court lacked subject matter jurisdiction to quiet title to the building because it is in Los Angeles County, not Orange County. Citing a 100-year-old case, he argues that a quiet title action must be filed in the county where the real property is located as a matter of jurisdiction. (Citing *Maguire v. Cunningham*

20

(1923) 64 Cal.App. 536, 540 ["It is the settled policy of the state that actions to quiet title, and certain others which affect real property, shall be commenced in the county in which the real property is situated"].)

We generally have no issue with older authority. But older authority must be carefully reviewed to ensure the principle cited is still valid law. That did not happen here. The jurisdictional requirement set forth in *Maguire v. Cunningham*, *supra*, 64 Cal.App. 536, was based on two sources: section 78 and article VI, section 5 of the California Constitution. These authorities were repealed decades ago. The former in 1953. (Former § 78, repealed by Stats.1953, ch. 206, § 7, pp. 1341-1342.) The latter in 1966. (*Childs v. Eltinge* (1973) 29 Cal.App.3d 843, 851.) More recent case law has stated the real property's location is relevant to venue, not jurisdiction. (*MacKinder v. OSCA Development Co.* (1984) 151 Cal.App.3d 728, 737-738; *Douglas v. Donner Pines, Inc.* (1977) 73 Cal.App.3d 268, 271; *Nelson v. Crocker National Bank* (1975) 51 Cal.App.3d 536, 540; *Childs*, at p. 851.) Lundin has not argued that venue was incorrect.

*D.  Fees and Costs Appeal*

The fees and costs appeal asks that we reverse the fees and costs award if we reverse the underlying judgment. Since we have affirmed the judgment, we also affirm the fees and costs award.

21

## III

## DISPOSITION

The judgment and the fees and costs award are both affirmed.  WKS is entitled to its costs on appeal.


                                        MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.